# CIRCUIT COURT OF THE UNITED STATES,

## FOR THE

# DISTRICT OF VERMONT,

## MAY TERM, 1848.

---

THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF THE UNITED STATES *v.* WYLLYS LYMAN AND OTHERS.

The act of incorporation of the Bank of the United States, passed by the legislature of the state of Pennsylvania, February 18, 1836, having provided, that notice of the organization of the bank should be given on or before the third of March then next ensuing, and the bank being found in operation afterwards, under the act, it was held, in the absence of evidence to the contrary, that it must be presumed to have been organized as early as the time prescribed.

The defendants, March 10, 1836, purchased all the property of the branch bank, or office, established at Burlington by the Bank of the United States created by act of Congress in 1816. The Bank of the·United States incorporated by the State of Pennsylvania February 18, 1836, came into existence, as an organized corporate body, simultaneously with the termination of the banking powers and operations of the old company ; and all the estate and effects of the old company were transferred to the new,—one witness testifying, that this transfer included the property sold to the defendants. And it was held, in the absence of testimony showing the time of this transfer, that these circumstances,·connected with the bringing of this action against the defendants by the new company, and the possession by them of the written evidences of the defendants' debt, were sufficient to show, that the contract was in fact made by the defendants with the new company.

The acts, or admissions, of one of several joint contractors, or promissors, are admissible, for some purposes, as evidence against all, where they do not extend to creating a new contract, or enlarging a pre-existing obligation, or liability, but merely show, that that obligation, or liability, has not been discharged, or has been discharged in part only.

Bank of United States *v.* Lyman et al.

If it appear, that one of several joint contractors was the agent of all, to take care of the joint concern and transact the business growing out of it, his acts or admissions while so acting, relative to any thing within the scope of his authority, are binding upon all.

Where there are several joint contractors, and one acts professedly for all during a number of years, without objection, all residing in the same neighborhood and having daily communication and intercourse with each other, the assent of the others, they having adopted the first act, is to be presumed from their silence and acquiescence.

Where, under a declaration containing counts for money had and received and on an account stated, the plaintiffs filed a bill of particulars, stating their claim to be upon two promissory notes, particularly described, it was held, that they were not at liberty to give evidence of, or recover upon, the pre-existing debt, or original consideration of the notes.

No person, although in fact a principal, or partner, can sue, or be sued, upon a bill of exchange, or negotiable promissory note, unless he appear upon its face to be a party to it.

In this case the Bank of the United States, the plaintiffs, sought to recover upon a promissory note, executed by the defendants, and made payable to "Samuel Jaudon, Esquire, Cashier, or order," and it appeared, that the note was given for a debt due to the plaintiffs, and that Jaudon was their cashier, acting merely as their agent in taking the note, and having no personal interest in it whatever, and, the note not having been indorsed by Jaudon, it was held, that the plaintiffs could not sustain an action upon it, nor give it in evidence under a count for money had and received to their use, or on an account stated with them.

A part payment, a promise to pay, or an acknowledgment of liability, by the indorser of a promissory note, after the note becomes due, is *prima facie* evidence, not only of notice, but of presentment.

Where, after a promissory note had been duly protested for non-payment the indorser requested, that it might be kept charged in a separate account, and, when the account, so kept, was subsequently rendered, made no objection to it, except to claim an additional item of credit, and said nothing as to want of notice of non-payment, it was held, that this was an acknowledgment of liability to pay the note, and thereby an admission, that notice had been given.

Where the defendants purchased the entire property of the branch bank of the United States at Burlington, including the suspended debts, which latter were purchased at a great discount from the estimate of their value in

gross, and it appeared, that two debts, which stood upon the list of suspended debts as due, had been in fact compromised and discharged previous to the purchase by the defendants, but that this was known to two of the defendants, one of whom acted as the agent of the others in making the purchase, it was held, that this gave the defendants no legal claim against the vendors for the amount of those debts.

In this case a verdict was taken for the plaintiff at a former term, subject to the opinion of the court on certain questions reserved at the trial. It appeared, that the Bank of the United States, created by congress in 1816, had established a branch, or office, at Burlington, in Vermont, which was several years in operation, and continued to do business until September, 1835. On the 10th of March, 1836, the defendants made a proposition, in writing, " to purchase of the Bank of the United State the property of the Office at Burlington, *as it was upon the second day of March,* 1836," for the sum of $141,777,87, on an estimate made separately of the real estate, the good notes and demands, and the demands forming what was called the suspended debt. The proposition was accepted on the 15th of the same month; and on the 1st of April the contract was carried into execution by the defendants, executing four promissory notes, for the sum of $35,500 each, payable in one, two, three, and four years, and by their taking a conveyance and delivery of all the property, except certain bills, or notes, which had been paid into the office before the sale was consummated. In consequence of some of the bills, or notes, having been so paid, and to make up an even amount, the sum of $10,020 was paid in cash to the defendants, so as to make the exact sum of $142,000, the amount of the four notes. The other facts in the case, as well as the questions reserved, will sufficiently appear from the following opinion, which was delivered after presenting and reading a brief statement or synopsis transmitted by Judge Nelson of his opinion, he not being able to be present.

*S. S. Phelps* for plaintiffs.

*Rufus Choate* and *Asahel Peck* for defendants.

PRENTISS, J.   The declaration in this case contains two counts, one for money had and received, and the other on an account stated. In support of the counts two promissory notes were given in evidence, with several accounts current, letters of correspondence, and other documents and testimony.   Out of the evidence so given various questions have arisen, some involving the admissibility, and others the effect, or sufficiency, of the evidence.   The questions possess different degrees of importance, both intrinsically and in their bearing upon the case; and I shall notice them in such order and manner, as will enable me to dispose of them with as much brevity and as little repetition as practicable, entering no farther into the facts, than may be necessary to present, fully and intelligibly, the grounds of decision upon each particular point.

1. The plaintiffs were incorporated as a banking company, by the name of the Bank of the United States, by an act of the State of Pennsylvania passed February 18, 1836.   The contract, which is the origin, or foundation, of the principal claim in question, was made some time after the 10th of March, and carried into execution the 1st of April, of the same year.   The precise day of the organization of the plaintiffs as a banking company not being shown, it is objected, that it does not appear, that they were organized and competent to act as a corporate body, at the time the contract was made. To this, it seems to me, an answer was given by the counsel for the plaintiffs, which is quite sufficient.   The act of incorporation having provided, that notice of the organization should be given on or before the 3d of March then next ensuing, and the bank being found in operation afterwards under the act, it is to be presumed, that it was organized as early as the time prescribed, which was of course before the making of the contract.

2. It appears, that the Bank of the United States incorporated many years before by an act of congress, although it ceased to have any power to carry on banking operations after the 3d of March, 1836, continued in existence two years thereafter, for the purposes of suits for the final settlement of its affairs, and for the sale and disposition of its estate and effects.   As that company established the branch at Burlington, and was in existence at the time the contract for the purchase of the property of the branch was entered into, it is insisted, that it must be taken, in the absence of direct

proof showing it to be otherwise, of which it is said there is none, that the contract was made with that company; and consequently, that the plaintiffs, as to one and much the most considerable of the claims in question, are mere strangers, for any thing that appears, without right or interest.

But it is to be observed, that the company established by the act of Pennsylvania was established in anticipation of the dissolution, so far as banking powers were concerned, of the company established by the act of Congress,—the new company having, with one exception, the same stockholders and capital, the same name and style, and the same capacity, so far as a state institution could have the capacity of a national institution. It was the substitution of a new charter under the state government in place of the old charter under the general government, so that the banking operations, which would cease under the one, might be continued, without intermission or interruption, under the new powers given by the other. Accordingly the new company, as we have seen, was to come and did come into existence, as an organized corporate body, before or simultaneously with the termination of the banking powers and operations of the old company; and all the estate and effects of the old company were transferred to the new. The particular time of the transfer, it is true, does not appear. But it is obvious, that it would naturally follow the organization immediately, in order to fulfil the purposes in view; and one of the witnesses states expressly, that it included the estate and effects sold to the defendants. This, therefore, connected with the bringing of the action and possession of the written evidences of the debt by the plaintiffs, is sufficient and very decisive evidence, that the contract was in fact made with the new company.

3. To establish several material facts in the case, various letters, acts and admissions of John Peck, one of the defendants, were given in evidence. This evidence, it is said, was inadmissible, at least so far as it concerns any of the defendants but Peck himself. The objection to it rests upon the ground, that, though the defendants were joint purchasers of the property, and gave their joint notes for the price, they were not partners, at least in such a sense as to make the acts and admissions of one evidence against the others. Admitting that the defendants are to be regarded, not as partners prop-

erly and strictly speaking, but only as joint contractors, or promis-
sors, still the evidence, to some purposes, was undoubtedly admissible.
It is a familiar rule of law, that the acknowledgment of one of seve-
ral joint debtors, either by word or act, is evidence to take the debt
out of the statute of limitations as to all. Thus payment by one,
says Lord MANSFIELD in *Whitcomb* v. *Whiting*, 3 Doug. 652, is
payment for all, the one acting, virtually, as agent for the rest; and
in the same manner, he adds, an admission by one is an admission
by all. This principle, however, does not extend to the creation of
a new substantive obligation, or a new additional liability; nor to
any thing, which is necessary to be done by the party claiming to
perfect or give effect to a conditional or imperfect obligation, or
liability,—such, for instance, as a demand of payment and notice of
non-payment of a promissory note indorsed by several joint payees.
There the admission of one of the indorsers, either as to the de-
mand, or notice, is probably no evidence against the other, especial-
ly so, as notice is necessary to each. But payment by one on a
note in pursuance of an existing joint liability, or an admission by
one that the note is unpaid, or that a particular balance is due upon
it, whether by stating an account, or otherwise, is good evidence
against all, in an action for the money due upon the note. That
neither creates a new contract, nor enlarges the pre-existing obliga-
tion, or liability, but merely shows, that that obligation, or liability,
has not been discharged, or discharged but in part only.

But however that may be, if it sufficiently appear, that Peck was
the agent to take care of the joint concern, and transact the business
growing out of it, in behalf of the other defendants as well as him-
self, his acts or admissions while so acting, relative to anything
within the scope of his authority, are, undoubtedly, in law, the acts
and admissions of all and binding upon all. Now it very fully ap-
pears, that the business was in fact conducted and transacted wholly
by and through Peck. The original proposition for the purchase
was signed "John Peck for himself and others;" and this was
ratified by the others, by their joining in the notes and completing
the contract in pursuance of that proposition. As at the first, so
throughout to the last, Peck acted as the ostensible manager, with-
out the appearance, from anything that is disclosed in the evidence,
of any objection or interference on the part of the other defendants.

It is obvious, that it would be quite inconvenient, in a joint concern of such a nature, for all to take part personally in the correspondence, to sign every letter and paper that passed, or for notices, accounts current, and other necessary communications, to be sent to and answered by all. It is usual, in such cases, to commit the transaction of the business and charge of the correspondence to some particular one, and have it done by and through him for all. And where it is done by and through one professedly for and in behalf of all for a series of years, as in this case, without objection, all residing in the same neighborhood and having daily intercourse and communication with each other, the assent of the others, they having adopted the first act, is to be presumed from their silence and acquiescence.

4. The bill of particulars filed by the plaintiffs having stated their claim to be two promissory notes particularly described, it is made a question, and becomes necessary to decide, whether it was competent for them to give evidence of, and recover upon, the pre-existing debt, or original consideration  According to the general rule of practice, as established by the authorities, it seems, that the particulars are considered and treated as incorporated with the declaration, and the plaintiff is not allowed to give any evidence out of them. Thus it has been held, that, where the particular of the plaintiff's demand was a promissory note only, and, on being produced, it appeared to be improperly stamped, so that it could not be given in evidence, the plaintiff, though he might otherwise have gone into the consideration of the note, was precluded therefrom by his particular. *Wade* v. *Beasley*, 4 Esp. 7. *Brown* v. *Watts*, 1 Taunt. 352. 1 Tidd's Prac. 537. On these authorities, which are obviously directly in point, the plaintiffs in the present case were confined by the terms of their bill of particulars to the two notes specified, and were not at liberty to proceed upon the original consideration, or cause of action.

5. The note first specified in the bill of particulars, and first given in evidence, if the plaintiffs could maintain an action upon it in any form, was undoubtedly admissible under either count in the declaration, not only under the count for money had and received, but also, being a liquidated debt, under the count on an account stated. To the admission of the note, however, an objection was

made, arising upon the face of the instrument, which presents the principal and most important question in the case.

The note is signed by the defendants, and is in this form,—" We jointly and severally promise to pay to Samuel Jaudon, Esquire, cashier, or order, &c." On the one side it is insisted, that Jaudon is the payee of the note, that the legal interest and right of action are in him, and that the plaintiffs, the note not being indorsed by Jaudon, can neither maintain an action directly upon it in their own name, nor an action in any form in their own name, to recover the money due upon it. On the other side it is urged, that, as it appears from the evidence in the case, that the note was given for a debt due the plaintiffs, and that Jaudon was their cashier, acting merely as their agent in taking the note, having no personal interest whatever in it, the plaintiffs are to be regarded as the real payees of the note, and, as such, may sue and recover the money in their own name. Upon this question I might content myself with a mere general statement of the conclusion, at which I have arrived, with a mere summary reference to authorities and reasons; but the nature and importance of the question seem to entitle it to more full and particular consideration.

It seems now to be settled in England, whatever difference of opinion there may have formerly been in regard to it, that parol evidence is admissible to show, that a person not named in a written simple agreement is the real party to it, either for the purpose of charging him upon it, or enabling him to take the benefit of it, as the case may be; but not, however, to discharge a party who has contracted in his own name. Thus the real principal, or a partner, from or to whom the consideration has moved, may sue or be sued, upon a written simple agreement, though he do not appear upon its face to be a party to it. This was so decided in the Court of Exchequer in the case of *Beckham* v. *Drake et al.*, 9 Mees. & Welsb. 78, afterwards affirmed in the Exchequer Chamber, in *Drake et al.* v. *Beckham*, in error, 11 Mees. & Welsb. 315. But however clear, undoubted, and now well established, this doctrine may be as to mere written simple agreements, the question is, is it applicable to negotiable instruments?

In a very early case, *Evans* v. *Cramlington*, Carth. 5, affirmed in the Exchequer Chamber, *Cramlington* v. *Evans*, in error, 2 Vent.

85

307, it was determined, that, where a bill is payable to *A. for the use of B.*, the right of action and of transfer is only in A., he having the legal interest, and B. only the equitable or beneficial interest. This decides, that the person named as the payee in a bill, and not the person for whose use or benefit it is made payable, is the party entitled to sue upon it. If this be so, where the trust is expressed and declared upon the face of the bill, the case must be much clearer and stronger, where neither the trust, nor the name of the party having the beneficial interest, appears at all upon the instrument. The observations of BULLER, J., in *Fenn v. Harrison*, 3 T. R. 757, show very plainly, that, in his opinion, no person could be considered as a party to a bill, unless his name, or the name of his firm, if a partner, appears upon it. In *Sifflin v. Walker et al.*, 2 Camp. 308, where a person not appearing to be a party to a promissory note was joined as a defendant in an action upon it, Lord ELLENBOROUGH said, that a note made and signed by one in his own name could not be treated as the note of him and another person, neither mentioned nor referred to. And in *Emly v. Lye et al.*, 15 East 7, the same eminent judge, with the concurrence of all his learned associates, held, that, on a bill of exchange drawn by one only, it could not be allowed to supply by intendment the names of others, in order to charge them; and that the plaintiff, if he would rest his claim on the bill, must confine it to the party who signed the instrument. In the case of *Beckham v. Drake et al.*, to which I have before referred as settling the general rule as to written simple agreements, Lord ABINGER said, "Cases of bills of exchange are quite different in principle from those which ought to govern this case. By the law merchant a *chose in action* is passed by indorsement, and each party, who receives the bill, is making a contract with the parties upon the face of it, and with no other parties whatever. That is a class of cases quite distinct in its nature from the present." And PARKE, B., said, "Where a *contract in writing*, not under seal, is made in another name than that of the real principal, the real principal can sue and be sued. But," he added, "the case of bills of exchange is an exception, which stands upon the law merchant; and promissory notes another, for they are placed on the same footing by the statute of Anne. In neither of these cases can any but the parties named in the instrument, by their name or firm,

be made liable to an action upon it." Thus it appears, that negotiable instruments, according to these authorities, are exceptions to the rule, which governs written simple agreements in general, and that this, for supposed good and sound reasons, is the established doctrine in England.

The same doctrine, I may safely say, prevails in general in this country, though there may have been, now and then, an occasional departure from it. There can be little doubt, I think, when we refer to the case of *Van Ness* v. *Forrest*, 8 Cranch 30, how the rule of law on the subject is understood in the national court. There a note was executed to Joseph Forrest, president of the Commercial Company, for merchandize belonging to and sold as the property of the company. On the question, whether an action could be maintained upon the note in the name of Forrest, MARSHALL, Ch. J., said, " 'The suit is instituted on a promissory note given, not to the company, but to Joseph Forrest, president of the company. Although the original cause of action does not merge in this note, yet a suit is clearly maintainable on the note itself. Such suit can be brought only in the name of Joseph Forrest. It can no more be brought in the name of the company, than if it had been given to a person, not a member, for the benefit of the company. The legal title is in Joseph Forrest, who recovers the money, in his own name, as a trustee for the company."

To notice particularly all the decisions in the various state courts, having a bearing upon the question one way or the other, would not only take up much time, but be assuming an unnecessary task. I have looked, however, into a very considerable number of these local decisions; and it will be sufficient for every useful purpose, without going farther, to state the purport of such as have been made in the courts of some of the older and more commercial states. The decisions in the courts to which I refer present three classes of cases. The first is, where a promissory note is expressed to be payable, for instance, to *A. B. agent of C. D.*, both agent and principal being named in the note. In such case it is decided, that the principal cannot sue, though named. It is held, that a note payable to a person by name, though described therein as the agent of another, is a note payable to the person so described as agent, and that a suit upon it must be in his name, or in the name of his indor-

see. The second class is, where a promissory note is made payable to *the cashier* of a particular bank, giving the name of the bank, without the name of the cashier. In such case, it is determined, and very rightly, as I think, that the interest and right of action are in the principal who is named, rather than in the agent who is not named. The third class is, where a bill or note is made payable to, or is signed by, a person designated agent generally, as *A. B. agent,* without naming the principal. In such case, it is held, that the simple addition of *agent,* and of course the simple addition of *cashier,* without any specification whatever of the name of the principal, will not authorize the admission of parol testimony to show who the principal is, and make him a party to the instrument.

There may be, and indeed are, decisions in some of the state courts, not entirely reconcilable with the doctrine of the authorities, which have been cited and referred to; but however much such local decisions may be entitled to consideration and respect on account of the source from which they proceed, they can have no influence upon the question before us, so far as they are at variance with the general prevailing rule of commercial law. In suits in the courts of the United States, as is laid down in *Swift* v. *Tyson,* 16 Pet. 1, the true interpretation and effect of contracts and other instruments of a commercial nature are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence.

Upon the whole, it appears to me, that the true rule of law, as deducible from the adjudged cases, American as well as English, is, that no person, although in fact a principal or partner, can sue or be sued upon a bill or negotiable note, unless he appear upon its face to be a party to it. A promissory note, according to the expression of very great judges, partakes in some measure of the nature of a specialty, importing a consideration, and creating a debt or duty by its own proper force. Being assignable, and passing by mere indorsement, it is necessary that the parties to it should appear, and be known, by bare inspection of the writing; for it is on the credit of the names appearing upon it, that it obtains circulation. It is for these qualities, and on these considerations, that it is distinguished from written simple contracts in general, and made subject to a different rule.

The note in question here is a perfect instrument, without ambiguity in form or purpose, and must have operation and effect according to the terms in which it is expressed. It is made payable to "Samuel Jaudon, Esquire, cashier, or order." The promise, therefore, is to pay him, or the person to whom he shall order it to be paid; and it would be repugnant to the terms of the instrument to allow the Bank of the United States, or any one else, without his order, to demand and enforce payment of it by suit. The bank is not named in the note at all, either as principal, or otherwise; nor can it be inferred, from any thing contained in the note, that it was made even in trust or for the benefit of the bank, or that the bank has any interest whatever in it. To admit parol evidence to show that the bank is the real principal, and hold that it may sue upon the note as such, would be to subject negotiable paper to the very uncertainty the law intended to avoid. It would be putting promissory notes upon the footing of other written simple contracts, and prostrate entirely the distinction, which sound policy, as well as the nature and purpose of negotiable securities, demands should be kept up between the two classes of cases.

As the plaintiffs cannot be regarded as the payees of the note, it is almost superfluous to say, that the note is neither evidence of money had and received to their use, nor evidence of an account stated with them. The note creates no privity whatever between them and the defendants; and we have already seen, that, by the bill of particulars, they are limited to the note, and cannot go upon the antecedent cause of action, supposing they might otherwise do so, under the declaration.

It is insisted, however, that there is evidence, aside from the note, of an actual stated account, showing the balance due, and that that, with the note, is sufficient to enable the plaintiffs to recover under either count. This might be so, if the plaintiffs, though not the payees, were the real owners of the note, and there had been an actual accounting with them personally, or through their agents. But it appears, that the accounting, whatever there was, was with Robertson and others, to whom the beneficial interest of the bank in the note, with the other effects of the bank, had been assigned in trust for certain purposes, and who, for aught that appears, are still owners of the property of the note. There is no evidence, that the ac-

count of April, 1840, which was prior to the assignment, was ever delivered or sent to the defendants; and as to the accounts of April, 1842, and November, 1843, each is stated and rendered by the assignees, and each states the balance as due to them. The letter to Peck, inclosing the account of April, 1842, is signed, " Herman Cope, agent for J. Robertson *et al.*, Trustees," and states the account to be an account with them. The letter to Peck, of May, 1844, is signed in the same way, and speaks of the account of November, 1843, as an account with the same persons. The accounts being stated and rendered as accounts with the assignees, to whom the property of the note belonged, I do not well see, how the accounts can be treated as stated accounts of money due and owing upon the note to the plaintiffs, or as evidence of indebtedness to them. Even viewed as implying a promise, which would follow the right of action on the note, or simply as evidence of indebtedness on the note generally, it would not help the plaintiffs; for, as we have already seen, they are not the payees of the note, and have no right of action upon it.

If there had been an account stated by the defendants directly with the plaintiffs, while owners of the note, recognizing their right to be accounted with for the note, or such an admission of their title to the money due upon it, as would amount or be equivalent to an express promise to pay them, so that a cause of action might be considered as having accrued to and vested in the plaintiffs before the assignment, I do not mean to say, that, in such case, the assignees might not sue and recover upon such cause of action in the name of the plaintiffs. How that might be it is unnecessary to give any opinion, because the evidence presented, in any just view of it, falls short, as it appears to me, of making out any such case.

6. The other note given in evidence is the promissory note specified in the bill of particulars, executed by Lyman & Cole to the defendants, and by them indorsed to the plaintiffs. The plaintiffs being indorsees, and the defendants indorsers, the note was unquestionably admissible in evidence under the count for money had and received, if not under the other count. But the defendants can be chargeable only *as indorsers;* and this would be so, without any reference to the limited terms of the bill of particulars, whether the transaction be treated as a discount, and therefore a purchase of the

note, or as a loan of money, taking the note in payment, or even as taking it in payment of an antecedent debt. Viewed in either light, due presentment for payment and due notice of non-payment were indispensable, to create any liability on the part of the defendants. There is proof sufficient of due presentment of the note for payment, but there is no direct proof of notice of non-payment. The only question, therefore, is, whether there is evidence, from which notice may be inferred.

It has been often held, that part payment, a promise to pay, or an acknowledgment of liability, by the indorser, after the note becomes due, is *prima facie* evidence, not only of notice, but of presentment. Now, what are the facts in relation to the note in question? We have already seen, that there is sufficient presumptive evidence, that Peck was the agent of the defendants, acting for himself and the others, and that his acts and admissions, relating to the joint interest, within the scope of his presumed authority, which of course extended to this note as a part of the joint concern, are to be considered as the acts and admissions of all. It appears, that after the note became due, several payments were made upon it; but as it does not appear, but that these payments were made by the makers of the note, they will be passed by. What is material to be noticed is, that, after the note had been duly protested for non-payment, it was charged and kept in a separate account, and that Peck, on a proposal to him to have it transferred to the general account, requested that it might continue, for the sake of convenience, to remain charged and kept, as it had been, in a separate account. In May, 1842, an account of this note, together with an account of the other note, separately stated, was rendered to Peck. He acknowledged the receipt of both accounts in June following, making no objection whatever to the account of this note, nor indeed any objection to the account of the other note, except that credit was not given to the defendants for certain demands, called the Truesdell and Burrows notes, for which they claimed an allowance. Now, is not the request to have this note remain charged and kept, as it had been, in a separate account, coupled with the fact of an account so charged and stated being rendered, received, and retained without objection, an acknowledgment of liability to pay the note? And can it be at

all material, whether the acknowledgment was before or after the assignment, whether to the plaintiffs or the assignees?

I have said, that no objection was made to the account of this note; and such, I think, is the just inference from the letter of Peck. But if the objection were intended to apply to the account of this note, as well as to the account of the other note, it was not an objection to the justness or correctness of any item in either account, but merely to the amount of the balance claimed. The objection was, that a certain credit had not been given, thereby impliedly admitting, that the note was a proper item in the account. In *Campbell* v. *Webster*, 2 Man. Gran. & Scott 258, where the defendant, in answer to an account sent to him by the plaintiff, admitted it to be all correct, except that the plaintiff had not credited him for a certain claim he had, and said he would pay the bill mentioned in the account, if the plaintiff would allow that claim, it was held, that this amounted to an admission of liability to pay the bill, a counter claim being made the only objection to paying; and that an admission of liability amounted to an admission, that all had been done, which was requisite to constitute such liability. This is decisive, that the setting up, in the present case, of a claim for a credit as the only objection, with total silence as to the want of notice, is an acknowledgment of liability to pay the note in question, and thereby an admission, that notice had been given.

7. The only remaining question in the case arises upon the claim set up by the defendants on account of certain demands, called the Truesdell and Burrows notes, alleged to have been included in the purchase from the plaintiffs, and to have been controlled or discharged by them.

The circumstances attending the Truesdell debt appear to be these. On the 10th of January, 1835, resolutions were passed by the directors of the branch bank, recommending a compromise of the debt, and an acceptance of an offer, which had been made by the Truesdells, to pay fifty *per cent.* as a composition. The resolutions were transmitted the same day to the parent bank, and the compromise so recommended was approved of by the parent bank on the 16th of the same month. The return made by the branch to the parent bank, on the 1st of June after, contains the debt in the list of the suspended debt, marked as *desperate*,—that is, of little or

Bank of United States *v.* Lyman et al.

no value. The same return states, that the compromise had been carried into effect. So it appears, that the debt had not only been marked and returned as bad and hopeless as early at least as the 1st of June, 1835, but had in fact then been compounded, and was so stated in the return, by the payment of fifty *per cent.* The debt, notwithstanding, still continued on the books of the branch, through some inadvertence or negligence, in the list of suspended debts, until the 2d of March, 1836, to which time the contract of purchase had relation,—the debt never having been transferred, as it is said it should have been, to the general loss account. The inference from all this is, that though the debt stood on the books apparently as a subsisting debt for a balance of fifty *per cent.*, it was not in fact a subsisting debt, but had been cancelled and discharged. If this fact were known to the defendants at the time of the purchase, the circumstance of the debt continuing on the books in the list of suspended debts can be of no real importance. It appears, that two of the defendants, Peck and Lyman, acted as directors of the branch from some time in 1834 to September, 1835, when the branch office closed. This of course included the time, when the resolutions referred to were passed and the compromise in pursuance of them was carried into effect. These two defendants, therefore, one of them being, as we have seen, the agent in making the purchase, must be presumed to have had knowledge of the facts in relation to the debt; and if so, it would seem to be very clear, that the defendants, especially as the purchase of the suspended debt was in the lump, on an estimate of its value in gross, and at a great discount on that estimate, cannot make the debt in question the foundation of a claim.

The other debt, the Burrows debt, consisting of two notes, also stood on the books of the branch in the list of suspended debts, apparently a debt due, at the time of the contract of purchase. It appears, that a compromise of this debt had been agreed upon between the parent bank and Burrows, and that the compromise was carried into effect on the 1st of May, 1835, by giving up the two notes to Burrows, and taking his note for 33 1-3 *per cent.* of the amount. Burrows failed to pay the note so given by him, and the compromise, by its own terms, became null and void; but the two notes, which had been given up, were retained by him. In the

86

return made by the branch to the parent bank on the 1st of June, 1835, *before spoken of, this debt* is mentioned in a memorandum at the bottom as having been compromised at 33 1-3 *per cent.*, which memorandum is signed by Mr. Lyman, one of the defendants, as director. The defendants, therefore, are to be taken as having full knowledge of the condition and circumstances of the debt, at the time of the purchase. They purchased the claim, whatever it was, in the state in which it then existed, as they purchased the other claims composing the lump of the suspended debt. For any thing that appears, the claim exists in the same state now as it did then. The plaintiffs have not discharged it, interfered with it in any way, or done any thing to deprive the defendants of any right or benefit they could claim in or out of it under the purchase. The plaintiffs sold the debt as it was, as they sold the rest of the suspended debt, without any guaranty or representation whatever on their part ; and the appearance the books presented of it could not have deceived or misled the defendants, two of them having officiated as directors of the branch at the time the compromise was effected. It must be presumed, that these two defendants, one of whom, as before re-marked, was the agent in making the purchase, knew the terms of the compromise, and all that had been done in pursuance of it. I am obliged, therefore, to say, that I see no legal grounds, on which this claim, any more than the other, can be sustained.

Having thus disposed of all the questions raised in the case, I have only to say, in conclusion, that the result from the whole is, that, for the reasons given on some of the points reserved, the ver-dict, in my opinion,—and such is the result of the opinion of the Judge who presided at the argument,—ought to be set aside, and a new trial granted.