### No. 10,536.

### DODO *v.* STOCKER.

Decided October 1, 1923.

Action on promissory note. Judgment for plaintiff.

*Affirmed.*

1. APPEAL AND ERROR—*Fact Findings.* Fact findings by the trial court will not be disturbed on review.

2. EVIDENCE—*Promissory Note—Oral Agreement.* An oral agreement which contradicts the terms of a promissory note, cannot be urged as a defense thereto.

3. CORPORATIONS—*Authority of Officials.* Evidence that the president and secretary of a corporation had the management of its affairs, is sufficient to establish their authority to transfer a promissory note belonging to the company in part payment of legitimate obligations of the corporation.

4. APPEAL AND ERROR—*Findings.* In an action on a promissory note, a general finding for the plaintiff defeats the contention of defendant that the note was procured by fraud, with which the plaintiff should be charged.

5. BILLS AND NOTES—*Corporations—False Representations.* The purchaser of a current note from an industrial corporation payee, is not individually charged with knowledge of false representations made by agents of the corporation in procuring the note, merely because he is a director in the corporation.

6. WORDS AND PHRASES—*Legal Fiction.* A legal fiction is an assumption, for the purposes of justice, of a fact that does not, or may not exist.

7. CORPORATIONS——*Fraud of Agent.* The law assumes and conclusively presumes that a corporation (or its directors as a board), has notice of the fraud of its agents.

8. EVIDENCE—*Presumptions.* A presumption cannot be based upon another presumption.

*Error to the District Court of the City and County of Denver, Hon. Samuel W. Johnson, Judge.*

Mr. C. W. DARROW, for plaintiff in error.

Mr. EVERETT OWENS, Mr. WILLIAM J. MILES, for defendant in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

DODO made his promissory note to the Mountain States Mixed Feed and Feedyards Company, payable in six months. The note was indorsed to Stocker for value before maturity; he brought suit and recovered judgment. The defendant brings error.

The note was given for preferred stock in the said company, with which was thrown in some common stock. Certain defenses were set up to which there was a general

denial. Trial was to the court and there was a general finding for the plaintiff.

The propositions relied on in defense are: 1. That the evidence shows that the plaintiff acquired the note after maturity; 2. that when the note was made there was an oral agreement that the stock which was the consideration for the note might be returned at any time, and that the note would then be surrendered; 3. that no transfer of the note from the company to the plaintiff is shown; 4. that the company was so organized that certain stockholders had the control of it, which plaintiff knew; 5. that of the $250,000 of common stock $50,000 was given as bonus with the preferred stock to the purchasers thereof, including defendant, and $200,000 was issued full paid to certain directors for "options, plans and formulae" which were of no value; 6. that the note was procured by false representations, which plaintiff knew.

As to the first point we find no evidence, and the general finding of the court for the plaintiff determines, for the purposes of this court, that the transfer was before maturity.

As to the second proposition, it is evident that the oral agreement contradicts the terms of the note.

As to the third, the evidence shows that one Collins, as president, and one Hoffman, as secretary and treasurer, indorsed the note in the name of the company by them, and it is claimed no authority is shown in them to do so, and that at a meeting of the directors which ratified their action, no quorum was present. It appears, however, in evidence that Collins and Hoffman had the actual management and charge of the company and that the note was transferred in part payment for the erection of a building in pursuance of the legitimate purposes of the corporation. This is enough to justify a finding of sufficient authority.

The fourth proposition requires no answer.

Upon the fifth it is claimed that the $200,000 was issued to certain directors for "options, plans and formulae of no value"; that this was fraudulent as to all other purchasers

of stock, including the defendant; that it was Stocker's duty as vice president and director to know of this issue and of the consideration, and therefore he is charged with notice of it, and is not a holder in due course. The general finding for plaintiff destroys this argument, because the effect of it is to say that the options, plans, and formulae were of value. We may say in addition that there is no proof or evidence of what such options, plans, and formulae were, nor of their value nor what has become of them, therefore nothing fraudulent has been shown on this point with notice of which the plaintiff can be charged.

In support of proposition No. 6 is testimony by the defendant himself that the agents for the company, who sold him the stock and obtained the note therefor, made certain representations to him concerning the stock, which were false; there is no direct evidence that Stocker knew anything about this or had any notice of it, but it is claimed that, since he was a vice president and director, he is individually charged with knowledge of it because the directors as a board, or, to put it in another way, the company itself, is charged with knowledge of such representations. This is the real question in the case: Is the purchaser of a current note, from an industrial corporation payee, individually charged with knowledge of false representations made by agents of the corporation in procuring the note merely because he is a director in the corporation?

The negotiable instruments act (C. L. § 3873) says: "To constitute notice of an infirmity  *  *  *  the person to whom it is negotiated must have had *actual* knowledge of the infirmity  *  *  *  or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There is no evidence here nor any claim that Stocker had actual knowledge of the false representations of the agents, and no evidence of bad faith or knowledge of any fact such that taking the note would amount to bad faith.

The authorities are few. *Washburn v. Inter-mountain Mining Co.*, 56 Ore. 578, 586-7, 190 Pac. 382, Ann. Cas. 1912C, 357, is with the plaintiff on this point. *Hardin v.*

*Dale,* 45 Okl. 694, 146 Pac. 717, L. R. A. 1915D, 1099, is with the defendant. *McCarty v. Kepreta,* 24 N. D. 395, 139 N. W. 992, 48 L. R. A. (N. S.) 65, Ann. Cas. 1915A, 834, is also with defendant, but is the case of a banking corporation and decided on the principle that the plaintiff who was president and a director of the bank payee, was presumed in law to know the facts under which the note was made, which possibly distinguishes it from the others and from the present case. Defendant cites *McClellan v. Morris,* 71 Colo. 304, 206 Pac. 575, but that case seems not to determine the point.

Morse on Banks and Banking, § 137, is quoted in *McCarty v. Kepreta,* accurately enough for that case, where the infirmity of the note taken from the bank by its president was want of consideration; but the author says that the director as an individual will be charged with knowledge which as a director he has or ought, if he had done his duty as a director, to have. This is far from saying that he is individually charged with knowledge of everything with knowledge of which the company is charged. If it is the duty of the director of a bank to know the consideration of the notes it has taken, he is not merely presumed to know it, but it is his duty to actually know it; therefore he cannot be heard to say he does not know it. But it is not his duty to know every lie the bank's agent may tell. True, as a member of the board he is deemed to know it, but not to know it is not a neglect of duty. Stocker, then, was not neglecting his duty in his failure to know the representations which Dodo testified were made to him. See *Washburn v. Inter-mountain Mining Co., supra.*

If a director, as director, actually knows it is absurd to say he does not personally know; moreover he cannot plead that, by reason of the neglect of his duty to know, he does not know, but how can he be said to actually know what he does not know, merely because a board of directors of whom he is one, are, by a fiction of law presumed to know? These considerations seem to distinguish *McCarty v.*

*Kepreta* and similar cases, e. g., *Bank of U. S. v. Lyman,* 20 Vt. 666, Fed. Cas. No. 924, from the present one.

It seems to us that *Hardin v. Dale,* and *McCarty v. Kepreta* violate the statute,—that they cannot logically be brought to agree with it. They in substance erase the word "actual" from the statute, and charge the holder, the purchaser of the note, with knowledge that they admit he does not have.

Counsel for the plaintiff in error inveighs against the fictions of the law, but without fictions he has no case. A legal fiction is the assumption, for the purposes of justice, of a fact that does not, or may not exist. The law assumes and conclusively presumes that a corporation (or its directors as a board, which is the same thing) has notice of the frauds of the company's agents. This is a fiction, but the plaintiff in error wishes to add—to hang upon that fiction—another fiction, i. e., that because the board of directors is presumed to have knowledge of the fraud, every director individually must be presumed to have the same knowledge, a presumption upon a presumption, which is forbidden. *Boulder v. Stewardson,* 26 Colo. App. 290, 294, 143 Pac. 820; *Mountain Co. v. Rivers,* 65 Colo. 561, 565, 170 Pac. 1164; *U. S. v. Ross,* 92 U. S. 283, 23 L. Ed. 707. If we use such fictions in the construction of the negotiable instruments act its value as a uniform law will be destroyed. The question always is: Did the purchaser know of the infirmity, or did he know anything that made it bad faith to buy the note? The fact that he is an officer and director in the company is evidence to go to the jury with other evidence upon the question whether his faith was good or bad. In this case it went to the court and the court has determined in favor of the plaintiff.

The judgment will have to be affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.