No. 19,665.

ROBERT MANUEL PENA, ET AL. *v.*
PEOPLE OF THE STATE OF COLORADO.
(363 P. [2d] 672)

Decided July 17, 1961.   Rehearing denied August 7, 1961.

Messrs. ZEROBNICK & LITVAK, Mr. LEO T. ZUCKERMAN, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy; Mr. J. F. BRAUER, Assistant, Mr. ROBERT PIERCE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

PENA and Huerta were jointly charged in a four count information with (1) burglary of the warehouse building of Gower Delivery Service, Inc., a corporation; (2) conspiracy to commit this burglary; (3) larceny of a motor vehicle, namely a Chevrolet truck, belonging to Gower Delivery Service, Inc.; and (4) conspiracy to commit this larceny of a motor vehicle. Defendants pled not guilty to all counts of the information, and demanded trial to a jury. Upon trial, at the conclusion of the People's evidence, defendants moved to dismiss on the grounds that the evidence was insufficient to permit submission of the case to the jury. This motion was de-

nied as to the first two counts of the information, namely burglary and conspiracy to commit the same; whereupon, for some unexplained reason, the district attorney voluntarily elected to withdraw counts three and four, charging larceny of a motor vehicle and conspiracy to commit the same. Defendants offered no evidence in their own behalf, and the jury found both defendants guilty of burglary and conspiracy. Motion for a new trial filed in behalf of defendants was denied and each was thereafter sentenced to a term of not less than four nor more than six years in the state penitentiary. By writ of error defendants now seek reversal of their respective judgments of conviction.

The main assignment of error is the alleged insufficiency of the evidence to support the charge of burglary and conspiracy to commit burglary, and it is specifically urged that the trial court committed error in failing to grant defendants' motion to dismiss interposed at the conclusion of the People's evidence. This motion should have been granted, say defendants, and, afortiori, the ensuing judgments of conviction cannot now be permitted to stand and should therefore be set aside.

We now hold that this contention of defendants is without merit and that the evidence is legally sufficient to sustain the verdicts of guilty returned by the jury. However, to demonstrate such sufficiency we deem it necessary to outline in some detail the evidence adduced by the People.

At the outset it is conceded that all of the evidence tending to tie these defendants into the burglary of the warehouse of Gower Delivery Service, Inc., is circumstantial in nature. However, circumstantial evidence is not always inferior in quality nor is it necessarily relegated to a "second rate" status. In *Martinez v. People,* 63 Colo. 347, 166 Pac. 241, we said: " * * * the evidence is, as mentioned above, circumstantial only. This fact is, of course, not sufficient to justify a reversal of the judgments as circumstantial evidence may be, and frequently

is, most convincing and satisfactory. * * * " Also, in *Ruff v. People,* 78 Colo. 475, 242 Pac. 633, it is said that in any criminal case material, relevant and competent evidence sufficient to convince the jury is necessary to sustain a conviction, "nothing more, nothing less," and that "circumstantial evidence is as competent and potent in such a case as any other." The test is still whether the facts and circumstances are of such quantity and quality as to legally justify a jury in determining guilt beyond a reasonable doubt. If such be the case, then this Court should not, indeed cannot, set aside the solemn findings of the trier of the facts. See also *Beery v. People,* 104 Colo. 70, 89 P. (2d) 534; *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508; *Falcon v. People,* 143 Colo. 173, 352 P. (2d) 310.

Proceeding then to a consideration of the evidence, it was established that Gower Delivery Service, Inc., a corporation, is engaged in the general delivery business in the Denver area and has its office at 2811 Walnut Street, Denver. Located at this address is one large building, described as of the "warehouse" type, in which "we store the trucks and company merchandise of various types." Five trucks comprise the fleet used by the company in its operation, and included in this number is a 1953, ¾ ton, Chevrolet truck. The company's weekly business operation ends every Saturday around noon and the drivers, after completing their deliveries for Saturday morning, customarily return their trucks to the warehouse where they are kept over the weekend. On Saturday, October 17, 1959, Clarence Gower, who is an officer of Gower Delivery Service, Inc., stated that he left the business premises at 2811 Walnut Street at about 10:30 A.M. He testified that he secured the premises but that as of that time only one of the five company owned trucks was in the warehouse. Other trucks, including the 1953 Chevrolet truck, were still out on their deliveries. However, as was noted supra, the obvious inference to be gained from Clarence Gower's testimony

is that it was the practice to keep these delivery trucks in the warehouse over the weekend. It was further established that although Gower locked the premises when he departed at 10:30 o'clock in the morning that one of his employees, Knippel, also had a key for the warehouse and that he could admit the trucks to the warehouse as each came in from its delivery trip.

Digressing momentarily, defendants attempt to make much of the fact that Knippel was not endorsed nor called as a witness by the People and that there was accordingly no direct evidence of the eye witness variety placing the 1953 Chevrolet truck in the warehouse as of Saturday noon, October 17, 1959. It is argued that because of this omission the entire case of the People collapses. This is oversimplification and results from a failure to take into consideration *all* the circumstances of the case.

Continuing then with a review of the evidence introduced by the People, at about 1:45 A.M. on Monday, October 19, 1959, officers Oman and Pratt noticed a truck being driven in an erratic fashion on the Valley Highway and accordingly gave chase. Though the officers sounded their siren and turned on their red light, the truck did not stop and at the first opportunity turned off Valley Highway, but thereafter was quickly brought to a stop by a dead end street. Officer Oman testified that he saw a person emerge from the right-hand side of the truck and he pursued. Without losing sight of such person, officer Oman quickly apprehended him. He was identified as Huerta. Officer Pratt in like fashion gave pursuit to the driver of the truck, who emerged from the left-hand side of the truck, and he without delay apprehended the driver, who turned out to be Pena. Both Huerta and Pena offered resistance, but such was overcome by the officers who effected the arrest. In this connection both Pena and Huerta were carrying knives and the testimony was that Huerta pulled his knife on the officer in resisting arrest. Huerta had in his posses-

sion, inter alia, six gum balls with the trade name "FORD" imprinted on each and a tape of the type customarily used in an adding machine. The truck from whence these two defendants fled was the 1953 Chevrolet truck belonging to Gower Delivery Service, Inc., bearing appropriate lettering to that effect on its sides. When questioned by the police the defendants denied everything, stating that neither knew the other and that they were only sleeping in the alley when aroused and for no good reason arrested.

Upon finding the 1953 Chevrolet truck with the firm name "Gower Delivery Service" prominently displayed thereon, the officers called headquarters and as a result of their report Officer Gebhart, accompanied by Clarence Gower, immediately went to 2811 Walnut Street for the purpose of checking the premises. Their check quickly revealed that the building had been burglarized. Investigation revealed that entry had been gained by breaking a 12x14″ panel of glass with a piece of concrete, which in turn permitted an overhead sliding door to be opened. This sliding door led directly to the area in the warehouse where the company's trucks were housed. Clarence Gower testified that of all the trucks owned by Gower Delivery Service, Inc., only one was "missing," namely the 1953 Chevrolet truck in which the defendants were apprehended.

Further investigation revealed that in another part of the building a gum ball machine had been smashed and numerous gum balls were scattered about on the floor. These gum balls bore the trade name "FORD" imprinted on each ball. Clarence Gower also testified that an adding machine and a typewriter were missing, and identified the tape taken from Huerta as "similar" to the tape used in his missing adding machine. On this state of the record the People rested their case and the defendants elected to present no evidence in their behalf.

As stated above, the defendants' chief assignment of error stems from the fact that Knippel did

not testify at the trial and as a result there was no direct evidence to establish that the 1953 Chevrolet truck was actually returned to the warehouse on Saturday, October 17, 1959. Such being the case, it is argued that all of the evidence pertaining to the 1953 Chevrolet truck and the circumstances surrounding the apprehension of the defendants while driving said truck have been stricken and in such a posture the entire case would fall. We hold that such evidence was admissible as an incriminating circumstance having a logical and probative relationship to the charge of burglary and conspiracy to commit the same. The essential elements of the crime of burglary may be established by circumstantial evidence as well as direct. The testimony of the witness Gower when considered in the light of and in conjunction with all the circumstances of the case justified the legitimate and reasonable inference that the 1953 Chevrolet truck belonging to Gower Delivery Service, Inc., was housed in the company's warehouse on the weekend of October 17, 1959, and that sometime during this weekend it was feloniously taken therefrom by these defendants who forcibly entered the warehouse with the intent to commit larceny. In short, the evidence outlined above is sufficient to sustain the verdicts of guilty.

In a circumstantial evidence case, *all* of the facts and circumstances must be considered together, as a whole. As we said in *Militello v. People,* 95 Colo. 519, 37 P. (2d) 527: "The attacks upon much of this evidence, including the contention that it should have been stricken on defendant's motion, are based on the theory that isolated statements do not prove definite facts. This is seldom possible and never essential. A case of circumstantial evidence can rarely be so constructed. Its very nature implies the weaving of a fabric of known facts, which, often infinitesimal or immaterial, or even prejudicial when considered alone, become important *only as they are tied to others, and when so tied lead to inevitable conclusions as to facts in issue.*" (Emphasis

supplied.) When all of the incriminating circumstances of the instant case are "tied together" there is ample evidence to support the verdict of the jury.

■ Defendants contend that *Lombardi v. People,* 124 Colo. 284, 236 P. (2d) 113, governs the instant case and requires a reversal thereof. We think the Lombardi case is clearly distinguishable from the instant situation. In the Lombardi case the only incriminating circumstance was the possession by the defendant of bottles of liquor "similar" to those taken in the burglary of a liquor store. In the instant case there are numerous incriminating circumstances, including the defendants' unlawful possession of a truck owned by the Gower Delivery Service, Inc., and Huerta's possession of 6 gum balls "similar" to gum balls found on the floor in the Gower warehouse, together with his possession of a tape "similar" to the kind of tape used in the missing adding machine. No more need be said to demonstrate that the circumstantial evidence present in the instant case is much more potent and compelling than in the Lombardi case.

■ Defendants' remaining assignment relates to the admission in evidence of certain exhibits, namely the knives and monies taken from the defendants; the 6 gum balls and adding machine tape taken from the person of Huerta; and the gum balls taken from the floor of the Gower warehouse. No objection was made in the trial court when these exhibits were offered. Such being the state of the record, this assignment should not now be considered. *Will v. People,* 130 Colo. 590, 278 P. (2d) 178. However, we perceive no error in the admission of the aforementioned exhibits. In a case based on circumstantial evidence, wide latitude is necessarily allowed in the introduction of evidence. *Helser v. People,* 100 Colo. 371, 68 P. (2d) 543.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL, MR. JUSTICE DAY and MR. JUSTICE FRANTZ dissent.

Mr. Chief Justice Hall dissenting:

I dissent from the majority opinion.

Evidence in the case is direct and uncontradicted that the warehouse was entered and a typewriter and adding machine removed therefrom; that defendants were in possession of a truck belonging to Gower Delivery Service, Inc., and of six Ford brand gum balls and one adding machine tape.

There is no proof whatsoever that either of the defendants was ever in the warehouse or in the vicinity thereof. There is not one word of testimony in the record that anything other than a typewriter and adding machine was taken or missing from the warehouse.

Significantly, the defendants were not in possession of either of the items proved to have been taken. There is not one word of testimony that any gum balls or any adding machine tape had been taken, nor any evidence that any such tape was on the machine at the time of the burglary or elsewhere in the building.

The evidence is uncontradicted that the 1953 Chevrolet truck was not in the building at 10:30 A.M. on Saturday; it was in defendants' possession at 1:30 A.M. Monday. Where it was in the interval is undisclosed by the record. The majority opinion states that:

" * * * The testimony of the witness Gower when considered in the light of and in conjunction with all the circumstances of the case justified *the legitimate and reasonable inference* that (1) the 1953 Chevrolet truck belonging to Gower Delivery Service, Inc., was housed in the company's warehouse on the weekend of October 17, 1959 and (2) that sometime during this weekend it was feloniously taken therefrom (3) by these defendants (4) who forcibly entered the warehouse (5) with the intent to commit larceny. * * *." (Emphasis and numbering supplied.)

Thus it appears from the majority opinion by a progression of successive inferences that every element

262

of the crime of burglary is supplied. It is inferred that the truck was locked up in the warehouse on Saturday. To reach this conclusion it must be inferred that the driver returned the truck and parked it in the warehouse. There is no evidence from which either inference can logically be drawn.

The majority opinion states that:

" * * * the drivers, after completing their deliveries for Saturday morning, *customarily return* their trucks to the warehouse where they are kept over the weekend. * * * However, as was noted supra, the *obvious inference* to be gained from Clarence Gower's testimony is that *it was the practice to keep these delivery trucks in the warehouse over the weekend.*" (Emphasis supplied.)

If the record warrants this pronouncement without doing violence to the processes of reasoning, I have been unable to discover it. Even so, evidence of habit, or of what one customarily does, is not admissible, even in a civil suit, to establish what was done on a specific occasion.

" * * * Ordinarily it cannot be proved that a person did a particular thing on one occasion by showing that he did it at another time or times." 22A C.J.S., Criminal Law 412, §604; *State v. Lapan,* 101 Vt. 124, 141 Atl. 686.

The majority infer that there was a practice to keep the trucks in the warehouse over the weekend, then on this inference they again infer that the truck was in the warehouse on the weekend in question. This court, in dealing with such a situation in *Tate v. People,* 125 Colo. 527, 247 P. (2d) 665, said:

" * * * Any finding in this case of deliberation, premeditation, willfullness or any of the other ingredients of either first or second degree murder could only be based upon a suspicion as foundation for a presumption and then finally another presumption based upon the primary presumption. Presumption and inferences may be drawn *only from facts established,* and presumption may not rest on presumption or inference on inference.

*Dodo v. Stocker,* 74 Colo. 95, 219 Pac. 222; *Mountain Motor Fuel Co. v. Rivers,* 65 Colo. 561, 170 Pac. 1164; *Elliott v. People,* 115 Colo. 382, 174 P. (2d) 500; *and this rule is doubly applicable in criminal cases."* (Emphasis supplied.)

I am firmly convinced that there is no evidence in this record, circumstantial or otherwise, to establish the guilt of defendants of the offense of burglary, beyond a reasonable doubt or at all.

I am unwilling to infer that the trucks were kept in the warehouse over weekends (in fact, Gower admitted that he drove one home); unwilling to infer that the truck in question, known not to be in the warehouse at 10:00 A.M. on Saturday, was returned thereto. I am unwilling in a criminal case to substitute, for proof of guilt beyond a reasonable doubt, surmise, conjecture, guess, imagination and inference upon inference, obvious or otherwise.

The majority opinion seeks to distinguish *Lombardi v. People,* 124 Colo. 284, 236 P. (2d) 113, from the case at bar. I too would distinguish that case and conclude that the evidence against Lombardi was much stronger than that in the case before us. In *Lombardi* the proof, as in the present case, was clear that the premises had been broken into — there the similarity ends. Lombardi admitted being in the burglarized store after midnight of the night of the burglary; he described in detail how he thought the burglary had been committed. This testimony serves to distinguish *Lombardi* from the case at bar, where there is not one scintilla of evidence that either of the defendants was ever in the vicinity of, much less actually in, the burglarized premises.

In *Lombardi* there was uncontradicted testimony that fifteen cases of whisky, a Motorola record changer and a Bendix radio were taken from the premises, and that Lombardi had sold from his residence to two different persons liquor similar to that taken from the burglarized premises. This testimony serves to distinguish *Lombardi*

from the case at bar, where there is no evidence that anything, other than a typewriter and adding machine (never recovered), was taken from the warehouse.

In reversing Lombardi's conviction of burglary, this court said:

"The evidence, that soon after a store was broken into and robbed, defendants were found in possession of goods similar to those taken, but which no one could identify as those taken, is insufficient to sustain a conviction. *State v. Martin,* 118 S.C. 21, 110 S.E. 78.

\* \* \*

"There was insufficient evidence to warrant the submission of the case to the jury. Other errors assigned need not be discussed. The judgment is reversed, and the cause remanded with directions to the trial court to discharge the defendant."

I am of the opinion that the motion for a directed verdict of not guilty should have been sustained and the defendants discharged.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ join in this dissent.