## No. 20535.

### VERNON C. REED *v.*
### THE PEOPLE OF THE STATE OF COLORADO.
(402 P.2d 68)

Decided March 15, 1965.    Rehearing denied June 1, 1965.

Robert Bugdanowitz, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Richard L. Eason, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

Reed and one McClenny were jointly charged and convicted of burglary and conspiracy to commit burglary, Reed thereafter being sentenced to a term in the State Reformatory and McClenny to a term in the State Penitentiary. McClenny then sued out a writ of error seeking review of his own conviction. Thereafter Reed caused a separate writ of error to issue, whereby he now seeks reversal of the judgment and sentence.

Reed claims that, insofar as he is concerned, the trial court erred in the following particulars:

1. in refusing to set aside the verdict as being "manifestly against the weight of the evidence" in that such was based on the testimony of confessed criminals who were also accomplices;

2. in improperly permitting the district attorney upon cross-examination of McClenny to establish that McClenny had been convicted of "another" burglary; and

3. in allowing the People's witnesses Thomas and Sokolowski to testify that they were told by Sanford and Kalber, also witnesses for the People, that it was Reed and McClenny who had been "inside" the burglarized premises.

In our view none of these several contentions is possessed of merit and hence the judgment must be affirmed.

The information charged Reed and McClenny with the burglary of a warehouse. In a separate count Reed and McClenny were also charged with conspiracy with Sanford, Kalber, Thomas and Sokolowski and "other unknown persons" to commit the burglary of the aforementioned warehouse. All of these persons, as of the date of these alleged offenses, were police officers for the City and County of Denver.

Upon trial Sanford and Kalber testified that it was they who first conceived the idea to burglarize this warehouse and that they thereafter "lined up" Reed and McClenny. It was their plan that after entry into the warehouse was gained, Reed and McClenny were to then "crack" a floor safe which was supposed to contain considerable cash. On the night in question these four persons went to the warehouse and after some difficulty they managed to force a panel door and thereby gain entry to the warehouse proper. According to Sanford and Kalber, the two defendants then "went to work" on the floor safe, but despite several hours spent in trying to open the safe, their efforts in this regard proved singularly unsuccessful. Though the safe was never opened, it did give much evidence of having been "worked on."

While Reed and McClenny were inside the warehouse, Sanford and Kalber remained outside, serving as "lookouts." About this time Thomas and Sokolowski stumbled on the burglary scene. Without objection, it was established that Sanford and Kalber told Thomas and Sokolowski that a burglary was in process and inquired as to whether the latter two wanted to be "cut in." Upon getting an affirmative answer, Thomas and Sokolowski were instructed to act as "lookouts" on the other side of the building. This they did. Also, at this time it was agreed that after the "burglary was over" Thomas and Sokolowski would then "write up the offense report."

Thomas and Sokolowski testified that neither of them actually "saw" Reed or McClenny inside the warehouse, or for that matter at any time during the course of the evening. However, without objection, both testified that later on the same evening they were informed by Sanford and Kalber that the persons who had been inside the warehouse were Reed and McClenny. This particular conversation took place about an hour or so after the burglary. Thomas and Sokolowski, as already indicated, were the officers who later "covered in" on the burglary and made out the "offense report." It is the People's theory that even though the burglary proper was by this time consummated, the conspiracy was still in existence and that these officers were at this time trying to "cover up" their criminal activities so as to avoid detection.

When McClenny took the witness stand in his own behalf, he — like Reed — denied all participation in the burglary of the warehouse. McClenny was apparently not content to let the matter lie with a denial that he burglarized the warehouse, but went on to volunteer that he didn't "recall a thing about *any* burglary" and later testified that "I was never involved in *any* burglary." (Emphasis supplied.)

On cross-examination McClenny in response to a foundation question posed by the district attorney again stated that he was "never involved in *any* burglary." (Emphasis supplied.) It was at this point that the district attorney then asked McClenny if it were not true that in fact he had been convicted of "another" burglary just a few weeks before. Over objection, McClenny admitted that he had been so "convicted" but that he was in the process of "appealing" that conviction and that his motion for a new trial in that case was still pending in the trial court. Parenthetically, we note that McClenny's conviction of this "other" burglary was eventually "appealed" to this Court and upon review the judgment and sentence was affirmed. See *McClenny v. People,* 155 Colo. 202, 393 P.2d 736. To return, then, to the instant

case, the jury by appropriate instruction was advised that the evidence of McClenny's conviction for another offense — different from the one for which he was then on trial — was admitted for the purpose of aiding the jury "in determining the credibility of the defendant, Billy E. McClenny."

It is against this evidentiary backdrop that Reed contends that the trial court erred in the several particulars set forth above.

In our view the evidence is quite sufficient to support the verdicts of the jury, and such is true even though most of the People's evidence does come from the lips of so-called accomplices, who most certainly were "confessed criminals." In *McClenny v. People, supra,* we recognize the longstanding rule in this state that a criminal conviction may be grounded on even the uncorroborated testimony of an accomplice, pointing out, however, that in that case the testimony of one accomplice was in fact "corroborated" by the testimony of other accomplices. Such is also true in the instant case. In short, we find much competent evidence to support the finding of the jury.

Proceeding then to a consideration of Reed's second assignment of error, even if it were error to permit the district attorney to cross-examine McClenny in the manner outlined above, it is doubtful that under the circumstances such error could inure to the benefit of Reed. The jury was specifically instructed that the evidence of this "other" conviction was received for the limited purpose of aiding the jury in determining the credibility of McClenny. We must assume that the jurors assiduously followed the mandate of the court in this regard and considered this evidence for the limited purpose for which it was received.

In any event, we perceive no error in permitting the district attorney to thusly cross-examine McClenny. From the record it would appear that McClenny was bound and determined to advise this jury that he had

never been involved in *any* burglary, let alone the burglary for which he was on trial. In this connection it had already been established upon cross-examination of the People's witnesses that they had been involved in *many* burglaries. The fact, then, that a few weeks before McClenny had himself been convicted by another jury of another burglary is certainly some evidence that he was "involved" in another burglary! This tended to impeach McClenny's earlier statement that he was not "involved in any burglary" and hence clearly related to his credibility. It was on this basis that the trial court permitted this line of inquiry. In so doing, it did not err.

A somewhat analogous situation is found in *Molton v. People,* 118 Colo. 147, 193 P.2d 271. There the defendant tried to "explain away" his confession by volunteering that he had "never been in trouble before." On cross-examination the district attorney over objection was allowed to bring out that the defendant had at least "one brush with the law" when he was arrested for drunkenness. On review this was held to be proper cross-examination and that the line of inquiry was relevant.

█ Finally, we perceive no error in permitting the witnesses Thomas and Sokolowski under the circumstances related above to testify that Sanford and Kalber informed them it was Reed and McClenny who were "inside" the burglarized premises. In the first place, no obiection whatsoever was made by Reed at the time this line of inquiry was being developed. In *Patton v. People,* 74 Colo. 322, 221 Pac. 1006 we held that an interlocutory order made by a trial court during the course of the trial proper could not be raised in a motion for a new trial unless timely objection thereto was made at the time of the ruling or order. See also *Pena v. People,* 147 Colo. 253, 363 P.2d 672. In this regard it should be specifically noted that present counsel for Reed did not participate in the trial of this matter.

█ Further, this line of inquiry under the circumstances was indeed proper. It is well established that

the acts and utterances of one conspirator become the acts and utterances of all conspirators if such are done during the existence and in furtherance of the conspiracy. Here, even though the immediate object of the conspiracy had been consummated by the burglary of the warehouse the conspiracy nonetheless continued for the further purpose of the concealment of evidence which might tend to incriminate any or all of the conspirators to the end that all could avoid detection and arrest. Hence, the utterances of Sanford and Kalber that it was Reed and McClenny who were "inside" the warehouse were made at a time when their conspiracy with Reed and McClenny had not yet ended, and were clearly made under circumstances where the conspirators were trying to "cover up" their criminal activities so as to avoid detection and arrest. See *Kolkman v. People,* 89 Colo. 8, 300 P.2d 575 and *Smaldone v. People,* 103 Colo. 498, 88 P.2d 103.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY concur.