549 P.2d 419 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Donald Ray BURKE, Defendant-Appellant.
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Brett Rordan STALKUP, Defendant-Appellant.
Nos. 74-470, 74-521.
Colorado Court of Appeals, Div. III.
January 22, 1976.
Rehearing Denied February 13, 1976.
Certiorari Denied May 3, 1976.
*420 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Janet Lee Miller, E. Ronald Beeks, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colo. State Public Defender, T. Michael Dutton, Carol L. Gerstl, Deputy State Public Defenders, Denver, for defendants-appellants, Brett Rordan Stalkup and Donald Ray Burke.
Selected for Official Publication.
BERMAN, Judge.
On the evening of March 9, 1974, a Fort Collins bowling alley was burglarized. The burglars apparently made their entry through a roof ventilating duct and approximately $1,300 was taken. Following a police investigation, Jerry R. Harris, defendants-appellants Donald Ray Burke and Brett Rordon Stalkup were arrested in connection therewith and all three were subsequently tried jointly and convicted by a jury of second degree burglary (§ 18-4-203, C.R.S.1973), theft (§ 18-4-401, C.R.S. 1973), conspiracy to commit theft (§ 18-2-201, C.R.S.1973, and § 18-4-401, C.R.S. 1973), and criminal mischief (§ 18-4-501, C.R.S.1973). From that conviction, defendants Burke and Stalkup have brought this appeal. Although the appeals were filed separately, they were consolidated because the issues involved are identical. We reverse.
A witness at the trial, John L. Harris, testified, over objection by appellants, that two or three days after the alleged incident, his brother (co-defendant Jerry R. Harris) told him that he, the two appellants here, and one other person had broken into the bowling alley through the roof at night and had taken some money. He further testified that his brother told him they got around $1,300, and that the money was divided among them. It is the admission of this testimony that is the focal point of appellants' contentions of error.
*421 Appellants concede that by an exception to the hearsay rule, extrajudicial statements of a conspirator are, in general, admissible against alleged co-conspirators on the theory that the declarations of one conspirator become the utterances of all conspirators if done during the course of, and in furtherance of, the conspiracy. People v. Braly, Colo., 532 P.2d 325; People v. Schlepp, Colo., 518 P.2d 824. They argue, however, that these statements were not admissible against them because they were the declarations of one conspirator, made outside the presence of the other conspirators, and made after the conspiracy had ended. In support of this argument they cite Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Cleaver v. United States, 238 F.2d 766 (10th Cir.); People v. Peery, 180 Colo. 161, 503 P.2d 350; Reed v. People, 156 Colo. 450, 402 P. 2d 68; and Annot., 4 A.L.R.3d 671.
The trial court admitted John Harris' testimony on the theory that since the theft statute requires that the taking be made with the intent permanently to deprive and since the proceeds of the alleged theft had not been returned, the conspiracy therefor was a continuing one, and would continue unless and until the proceeds were returned. We disagree. Although, as discussed below, a conspiracy to commit theft may continue beyond the commission of the immediate crime, permanent deprivation is not an element of theft. Indeed, in fact, the return of the property is not a defense. Kelley v. People, 166 Colo. 322, 443 P.2d 734. Rather, it is the intent at the time of taking to permanently deprive that is the essential element of theft. Hucal v. People, 176 Colo. 529, 493 P.2d 23. Accordingly, we hold that a conspiracy to commit theft does not continue, per se, until the proceeds are returned.
On appeal the People point out that a conspiracy may continue for the purpose of concealment of the crime or "avoidance of the penalty for the misdeed." Bingham v. People, 157 Colo. 92, 401 P.2d 255; Smaldone v. People, 103 Colo. 498, 88 P.2d 103. Based upon this premise, they go further to assert that every conspiracy to commit a substantive crime continues for the purpose of concealment of that crime and that therefore the challenged hearsay statements were not made after the termination of the conspiracy and hence were admissible.
Colorado does recognize the possibility of a conspiracy continuing beyond the execution of the substantive crime, Smaldone, supra, but the cases do not support the People's contention that every conspiracy continues for the purpose of concealment. In those cases which have admitted statements made by one conspirator after the actual consummation of the immediate crime, there was specific evidence of a plan or agreement of concealment or other continuing purpose which supported the admissibility of those statements. See, e. g., Bingham v. People, supra; Reed v. People, supra; Smaldone v. People, supra; Kolkman v. People, 89 Colo. 8, 300 P. 575; People v. Akins, Colo.App., 541 P.2d 338. "Though the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one. . . . Continuity of action to produce the unlawful result, or . . . `continuous co-operation of the conspirators to keep it up' is necessary." Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (emphasis added)
Although a conspiracy need not necessarily terminate with the completion of its targeted crime, nor even the arrest of a conspirator, when it does terminate depends upon the "particular facts and purposes of such conspiracy." Cleaver, supra; United States v. Mares, 260 F.Supp. 741 (D.Colo.), reversed on other grounds, 383 F.2d 805 (10th Cir.). Obviously, no ordinary perpetrator of a crime desires to be caught and he undoubtedly does what he can to conceal his participation in the crime to prevent this result. Smaldone v. People, supra. But the mere recognition that such a desire is generally present does not constitute sufficient basis to conclude *422 that each and every criminal conspiracy survives the completion of the crime at which it was directed. It is the actions taken in concert by the conspirators which alone can establish that the conspiracy was to continue beyond the completion of the substantive crime.
Here, whether one presumes that a plan to conceal their crime was conceived either before the crime or after, there is no evidence indicating any joint effort on the part of the conspirators to carry out that plan after the crime occurred. Without evidence to support the People's contention that the defendants cooperated to effect the concealment of the crime, we must agree with appellants that their conspiracy ended upon the division of the proceeds of the robbery. See Cleaver, supra. Consequently, the hearsay declarations of Jerry R. Harris should not have been admitted as evidence against appellants.
Although conspiracy is the "darling of the modern prosecutor's nursery," Harrison v. United States, 7 F.2d 259 (2d Cir.), it should not be treated as a favored and pampered child that must be permitted to run roughshod over well conceived and valuable exclusionary rules.
Furthermore, when it became apparent that there was no independent evidence of a continuing conspiracy, the trial court should have given appellants' tendered instruction which would have limited the jury's consideration of John Harris' testimony to co-defendent Jerry R. Harris. This it refused to do; instead, the court instructed the jury that before this testimony could be considered against any defendant, the jury should first determine whether a conspiracy was in existence at the time the declaration was made. This too was error.
The declarations of an alleged conspirator are admissible against an alleged co-conspirator only when the existence of the conspiracy is shown by independent evidence. Braly, supra; Schlepp, supra. Similarly, when it is contended that the declaration was made after the conspiracy had ended, there must also be a showing, by independent evidence, that the conspiracy was still in existence at the time the declaration was made. Akins, supra.
While the issue of whether the conspiracy had ended at the time of the declaration may properly be submitted to the jury, Davis v. People, 176 Colo. 378, 490 P.2d 948; Kolkman, supra, "[t]he issue of admissibility of the testimony initially presented a question of law to be decided by the trial judge." Akins, supra; Braly, supra; Carbo v. United States, 314 F.2d 718 (9th Cir.). And, if the court, in its discretion, admits the hearsay first, and independent evidence is not later introduced to support the initial determination by the court that the conspiracy continued, the jury must be instructed to disregard the testimony. Braly, supra; Beckwith v. United States, 367 F.2d 458 (10th Cir.).
Here, one witness' testimony established the existence of a conspiracy prior to, and at the time of the burglary, but it did not establish the existence of a conspiracy approximately three days later when the declaration was made, and no further evidence of a continuing conspiracy was offered. Hence, the court erred in not giving a limiting instruction. Due to our disposition of the foregoing contention, we need not reach appellants' other objection to John Harris' testimony.
Appellants also urge that the trial court erred in not granting their motions for judgment of acquittal on the ground that the testimony of the only witness connecting the appellants to the crime charged was insufficient to support a conviction.
That witness, Patricia Gill, testified that on the evening of March 9, 1974, she accompanied one John Martinez (originally named a co-defendant but not tried with appellants) to a restaurant in Cheyenne where they met the three defendants, Burke, Stalkup, and Harris. At about 2:30 a.m., she drove with them to Fort Collins where they parked a block away from the bowling alley and the four men got out of the car. Ms. Gill said she fell asleep and was later awakened when the four men returned to the car. John Martinez was *423 carrying a shoebox which was subsequently opened and contained "a lot of dollar bills and a lot of change." She further testified that they returned to Cheyenne at about 5:00 a.m., parked behind her house, counted the money, and divided it among them. Ms. Gill, who was not charged in connection with the incident, stated that she did receive some of the coins from the alleged burglary.
Reversal is required because of the admission of John Harris' testimony, but we do not agree that the trial court should have granted appellants' motion for acquittal. Properly instructed, a jury may convict upon the uncorroborated testimony of an accomplice. People v. Martinez, Colo., 531 P.2d 964; Davis v. People, supra. Furthermore, in several respects, for example, the amount of money that was taken and the time of the alleged burglary, Ms. Gill's testimony was corroborated by the competent testimony of witnesses other than John Harris.
The judgments are reversed and the cause is remanded for a new trial for defendants Burke and Stalkup.
RULAND and VanCISE, JJ., concur.