504 A.2d 647

**Billy Clayton RIVENBARK**

v.

**STATE of Maryland.**

**No. 672, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 10, 1986.

Howard Cardin, Assigned Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for

Baltimore County and Susan A. Schenning, Asst. State's Atty. for Baltimore County, on brief, Towson), for appellee.

Argued before ADKINS, BLOOM and WENNER, JJ.

ADKINS, Judge.

When the existence of a conspiracy has been established, declarations of a conspirator made during the pendency and in furtherance of the object of the conspiracy are admissible against another conspirator, *Lawrence v. State*, 103 Md. 17, 63 A. 96 (1906). Whether this exception to the hearsay rule was properly applied is the central issue in this case. For reasons we shall explain, we hold it was not. Consequently, we must reverse the felony murder conviction of appellant Billy Clayton Rivenbark.

In an earlier appeal, *Rivenbark v. State*, 58 Md.App. 626, 473 A.2d 1329, *cert. denied*, 300 Md. 795, 481 A.2d 240 (1984), we set forth some of the facts pertaining to the criminal event involved here. We need not repeat them all. It suffices to say that Rivenbark and Ronald Johnson were charged with the murder of Katherine Buress and with burglary of her house.[1] In the instant case, a jury in the Circuit Court for Baltimore County acquitted Rivenbark of premeditated murder and of second degree murder. It found him guilty of felony murder and burglary. The court sentenced him to life imprisonment for the murder and to a 20-year concurrent term for the burglary. An important piece of evidence against Rivenbark was a statement made by Ronald Johnson to Shirley Wilson, with whom Johnson had been living at the time of the crimes. This statement, inculpatory of both Rivenbark and Johnson, was made to

---

1. At a separate trial, Johnson was convicted of murdering Buress, and of related offenses. His convictions were affirmed in an unreported per curiam opinion, *Johnson v. State*, No. 858, Sept. Term, 1982 (filed February 3, 1983). Although the statement we are about to discuss figured in that case, the admissibility issue now raised by Rivenbark was not involved in Johnson's appeal. That admissibility question was raised by Rivenbark on his first appeal, but because we reversed on other grounds, we did not address it.

Wilson some six months after Ms. Buress's death. It was introduced via the testimony of Shirley Wilson, who had recorded it on a body wire, under police direction. The statement was, of course, hearsay. The trial court admitted it under the conspiracy exception to the hearsay rule. Rivenbark now contends that his felony murder conviction should be reversed because:

1. The State violated the discovery rules when it failed to furnish the statement to Rivenbark pre-trial;

2. The statement was inadmissible under the conspiracy exception; and

3. The court should have required the jury to determine whether the statement had been made during and in furtherance of the conspiracy.

Because we agree with Rivenbark's second contention, we need not address the first and third.

■ The hearsay exception we stated at the outset of this opinion depends on the existence of a conspiracy; to be admissible against a conspirator, the statement must be made by another conspirator; it must be made during the course of the conspiracy; it must be made in furtherance of the conspiracy. *Lawrence, supra. And see Greenwald v. State,* 221 Md. 245, 249, 157 A.2d 119 (1960). Moreover where, as here, the State seeks to use against one conspirator (*Rivenbark*) statements made by a conspirator (*Johnson*) to a third party (*Wilson*), the State must first demonstrate the existence of the conspiracy by evidence *aliunde* the statements. *Mason v. State,* 18 Md.App. 130, 136–37, 305 A.2d 492 (1972). The State argues that it has done this. In its view, there was evidence that Rivenbark and Johnson conspired to rob Ms. Buress. That conspiracy, the State argues, included a "conspiracy of silence" that was still in effect when, six months after the crimes, Johnson talked to Shirley Wilson about those crimes.

It is difficult to see just how Johnson's remarks to Wilson were in furtherance of any "conspiracy of silence" between him and Rivenbark; Johnson's discussion of the crimes with

Wilson would seem to suggest the contrary. As the late Chief Judge Bond observed in *Markley v. State,* 173 Md. 309, 318, 196 A. 95 (1938), "admissions ... of co-conspirators, out of the presence of the objectors, and in no way authorized by them, would not be competent evidence against them, for they would not be statements ... in furtherance of the conspiracy." Other courts have noted that mere narrative accounts of a crime by one conspirator to a third party, given long after the crime and not in the presence of a co-conspirator are not admissible against the co-conspirator because they are not in furtherance of the conspiracy. *State v. Borserine,* 184 Kan. 405, 337 P.2d 697 (1959); *State v. Gauthier,* 173 Or. 297, 231 P. 141 (1924); 4 Wigmore, *Evidence* § 1079, p. 180, n. 1 (J. Chadbourn ed. 1972). The statement in this case is of that type.

But the "in furtherance" requirement has been read broadly, as Judge Karwacki pointed out in *Thomas v. State,* 63 Md.App. 337, 347, 492 A.2d 939 (1985): " 'If *some* connection is established between the declaration and the conspiracy then the declaration is taken as in furtherance of the conspiracy' " (quoting Levie, *Hearsay and Conspiracy,* 52 Mich.L.Rev. 1159, 1168 (1954) [emphasis in original]. We pass that point and focus on whether Johnson's statements were made during the pendency of a conspiracy.

To support its "conspiracy of silence" argument, the State relies on *Johnson v. State,* 9 Md.App. 327, 341, 264 A.2d 280, *cert. denied,* 258 Md. 728 (1970). There, we said:

> 'The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission....' [quoting 2 Wharton's, *Criminal Evidence,* § 430 (12th ed. 1955) ]

The State also points to Chief Judge Gilbert's language in *Myers v. State,* 58 Md.App. 211, 240, 472 A.2d 1027 (1984):

The law is clear that the statement of a conspirator, made for the purpose of concealing the crime after the object of the conspiracy has been attained, is admissible against any co-conspirator on trial. Such a statement is admissible as an exception to the hearsay rule.... [The statements in question] may reasonably be interpreted as having been made during the course of the conspiracy of silence after the murder. [citations omitted]

Rivenbark, on the other hand, refers us to cases such as *Lawrence* and *Greenwald,* both of which indicate that a conspiracy continues only until it has been abandoned or until its purpose has been accomplished. *Lawrence,* 103 Md. at 22, 63 A. 96; *Greenwald,* 221 Md. at 250, 157 A.2d 119. As we recently said in *Thomas,* 63 Md.App. at 347–48, 492 A.2d 939:

By 'pendency' we mean the duration of the unlawful agreement, but that does not mean that the conspiracy continues *ad infinitum.* The duration of a conspiracy is restricted to the accomplishment of its 'main aim.'

*Lawrence* and *Greenwald* are not of much help to Rivenbark. Neither dealt with the State's theory that when there is a conspiracy to commit a crime there is, by operation of law, a "conspiracy of silence" to conceal evidence of the crime, although both make clear that a statement made after termination of the conspiracy is not admissible against a co-conspirator. *Thomas's* language is more to the point, since it suggests that a conspiracy to commit a crime ends when the "main aim" of the conspiracy is accomplished; that is, when the crime is committed. That would seem to reject the notion of an automatic "conspiracy of silence" but the *Thomas* panel did not have that issue before it. The statement admitted there was made while the crime the conspirators had conspired to commit was still in progress.

By the same token, *Johnson* and *Myers,* when closely read, give little support to the State. In the former case, the statements admitted had nothing to do with concealment of the crime or evidence of it; they recounted an event that had occurred during a bank robbery. What is more,

the statements were made in the getaway car, minutes after the robbery, while the robbers were in the process of escaping from the scene of the crime. The robbery, in effect, was still in progress. .See, e.g., United States v. Cox, 449 F.2d 679 (10th Cir.1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972), and State v. Newberry, 605 S.W.2d 117 (Mo.1980). The co-conspirator's statements were admissible as statements made during the pendency of the conspiracy of that on-going crime. Our post-crime conspiracy language was unduly broad and unnecessary to the decision in the case.

In *Myers*, Chief Judge Gilbert, just before the language we have quoted from that decision, noted evidence not only of a conspiracy to slay Myers's wife, but also evidence of an explicit conspiracy "to 'cover up' [the involvement of the conspirators] in that murder." 58 Md.App. at 240, 472 A.2d 1027. The subsequent reference to "the conspiracy of silence after the murder" clearly addresses that explicit conspiracy. This is a far cry from holding that whenever there is a conspiracy to commit a crime, the law implies a post-commission conspiracy to conceal evidence of the crime.

The Maryland cases, then, hold that a .conspiracy to commit a crime ordinarily terminates when its "main aim" has been accomplished. *Thomas, supra.* They do not compel us to the conclusion that the main aim of every such conspiracy also includes a "conspiracy of silence" that, under the State's theory, could last for months or even years—who can tell?—after the consummation of the crime. On. this state of the law, we turn to decisions from other jurisdictions.

A useful starting point for this review is *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). Krulewitch was charged with, among other things, conspiracy with another to transport a woman from New York to Florida in violation of the Mann Act. Part of the evidence used to convict Krulewitch was testimony of the victim who recounted a conversation with Krulewitch's co-

conspirator; a conversation that took place over a month and a half after the victim had been transported to Florida, and indeed, after she had returned to New York. In the conversation the co-conspirator urged the victim not to talk and to take the blame for Krulewitch. The Government argued that this evidence was admissible because even after the termination of the central conspiracy an implied subsidiary phase of that conspiracy always survives—a phase with concealment as its objective.

This argument the Supreme Court squarely rejected. Justice Black pointed out that adoption of the rule espoused by the Government would create, virtually automatically in all criminal cases, a breach of the general rule against the admission of hearsay evidence, 336 U.S. at 444, 69 S.Ct. at 718. Justice Jackson, in a forceful concurrence, could find no basis for implying a continuing conspiracy for the purpose of concealment, although he recognized that an express conspiracy for that purpose could be proved in a proper case. 336 U.S. at 455–56, 69 S.Ct. at 724. He pointed out that the rule contended for by the Government suggested no limit to the implied conspiracy, either as to duration or means, and that the assumption of an indefinitely continuing conspiracy offense would result in an indeterminate extension of the statute of limitations for that offense. 336 U.S. at 456, 69 S.Ct. at 724.[2] He concluded that "it is better that the crime go unwhipped of justice

---

**2.** The Supreme Court came to grips with the statute of limitations question in *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). Relying on *Krulewitch* and on *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), it held that absent evidence of a specific conspiracy to conceal, a conspiracy to defraud the United States ended when that central criminal purpose had been accomplished. The statute of limitations ran from the date of the termination of that conspiracy; it was not extended because the conspirators took steps to cover their tracks after their central criminal purpose had been achieved. 353 U.S. at 405, 77 S.Ct. at 974. The Court reasoned: "[A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover

than that this theory of implied continuance of conspiracy find lodgment in our law...." 336 U.S. at 457, 69 S.Ct. at 724.

Decisions from our sister states have reached like results. In *State v. Yslas,* 139 Ariz. 60, 676 P.2d 1118, 1122 (1984), for example, the court pointed to the rule excluding a co-conspirator's statements made after the termination of the conspiracy and explained:

> Once a substantive crime has been committed, a conspiracy should not be deemed to be still operative merely because some of the conspirators act in concert to avoid detection.... We distinguish this from situations where conspirators make specific *pre-planned* efforts of escape, payment, concealment, or conversion of the fruits of the crime [citations omitted; emphasis in original].

In *People v. Centers,* 141 Mich.App. 364, 367 N.W.2d 397 (1985) there was a conspiracy to rob. After the robbery, the culprits returned to a house where they, or some of them, lived. One of them (not Centers) made inculpatory statements to a non-conspirator occupant of the house. The Michigan Court held the statement inadmissible against Centers; the robbery had been consummated, pursuit eluded, and a temporary place of safety reached. The court reasoned that "subsequent acts taken to conceal the conspiracy do not show a continuation of the conspiracy." 367 N.W.2d at 402.

Similarly, a Pennsylvania court rejected co-conspirator statements, reasoning that a conspiracy usually ends when its principal objective has been attained, and that no agreement to retain secrecy after the achievement of the unlawful end can be implied. *Commonwealth v. Scarborough,* 313 Pa.Super. 521, 460 A.2d 310, 314 (1983). Pennsylvania will, however, admit a co-conspirator's statement if there is proof of an express conspiracy to conceal. *Commonwealth v. Coccioletti,* 493 Pa. 103, 425 A.2d 387 (1981).

---

up their crime in order to escape detection and punishment." 353 U.S. at 401–402, 77 S.Ct. at 972.

Colorado, like Pennsylvania, admits statements made during the existence of an actual conspiracy to conceal. *Reed v. People,* 156 Colo. 450, 402 P.2d 68 (1965). But it also rejects the notion of an implied conspiracy to conceal in every case. It is not the law in Colorado "that every conspiracy continues for the purpose of concealment." *People v. Burke,* 37 Colo.App. 289, 549 P.2d 419, 421 (1976). And the mere recognition that criminals don't want to be caught "does not constitute sufficient basis to conclude that each and every criminal conspiracy survives the completion of the crime of which it was directed." 549 P.2d at 421–22.

To be sure, there is authority to the contrary. We have already noted the *rationale* given by Wharton in the 12th edition of his treatise on *Criminal Evidence; see* p. 4, *supra.*[3] Underhill also opines that "... declarations of one conspirator after the commission of the crime, though ... made out of the presence ... of a coconspirator, are admissible against the latter in the following instances: ... concealing crime; ... concealing or suppressing evidence of crime; taking means to prevent or defeat prosecution...." 3 Underhill, *Criminal Evidence,* § 864 (5th ed. 1957) [footnote omitted]. And McCormick instructs:

> Under some circumstances, extending the duration of the conspiracy beyond the commission of the principal crime to include concomitant and closely connected disposition of its fruits or concealment of its traces appears justifiable.... However, attempts to expand the so-called 'concealment phase' to include all efforts to avoid detection have generally failed....

*McCormick on Evidence* § 267 at 793 (E. Cleary 3d ed. 1984).

The views of these scholars find support in some cases. By way of illustration, the Supreme Court of Nevada has said that "the duration of a conspiracy is not limited to the

---

3. It is of some interest that this language does not appear in the 13th edition of the treatise.

commission of the principal crime, but extends to affirmative acts of concealment." *Crew v. State,* 675 P.2d 986, 991 (Nev.1984). There is similar language in *Watson v. State,* 166 Miss. 194, 146 So. 122, 127 (1933). *And see Evans v. State,* 222 Ga. 392, 150 S.E.2d 240 (1966), *aff'd Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970);[4] *State v. Gauthier,* 113 Or. 297, 231 P. 141, 145 (1924); *State v. Crabtree,* 655 S.W.2d 173, 178 (Tenn.Crim.App. 1983); and *State v. Smith,* 631 S.W.2d 353, 360 (Mo.App. 1982) (although specific object of conspiracy was murder, its overriding purpose was avoidance of prosecution).

Other state decisions that contain hints of the implied conspiracy of concealment doctrine actually appear to present different bases for decision. For instance, in *Allen v. Commonwealth,* 176 Ky. 475, 196 S.W. 160 (1917), the conspiracy was to collect insurance proceeds by burning barns. After the barns were burned, but before the insurance was collected, certain statements were made by one of the conspirators. These were admitted, but it was clear that the object of the basic conspiracy had not been accomplished; that conspiracy was still pending. *And see Dailey v. State,* 233 Ala. 384, 171 So. 729 (1936) where it appears the court concluded there was an actual, as opposed to an implied conspiracy to conceal, and the statements were made in furtherance of that actual conspiracy, and during its pendency.

■ We believe that the better reasoned decisions are those that reject the argument that every criminal conspiracy includes, by implication, a conspiracy to conceal the crime. The concept, as *Krulewitch* and *Greenwald* point out, raises serious statute of limitations concerns. And it is in conflict with the hearsay rule's objective of excluding unreliable testimony—an objective which suggests that ex-

---

**4.** The Supreme Court's decision in *Dutton* did not embody approval of the Georgia implied conspiracy rule. The issue before the Supreme Court was whether application of the conspirator hearsay exception denied the constitutional right of confrontation. A plurality of the Court thought that it did not.

ceptions to the rule should be scrutinized with care. This is especially true because of the confrontation and cross-examination considerations implicated when evidence is admitted under a hearsay exception. *See Fuller v. State,* 64 Md.App. 339, 352, 495 A.2d 366 (1985). As the Colorado Court of Appeals said in *Burke,* 549 P.2d at 422:

> Although conspiracy is the 'darling of the modern prosecutor's nursery,' *Harrison v. United States,* 7 F.2d 259, 263 (2d Cir.1925), it should not be treated as a favored and pampered child that must be permitted to run roughshod over well conceived and valuable exclusionary rules.

■ The fact that we align ourselves with *Krulewitch* and the other decisions that refuse to adopt the implied conspiracy of concealment rule does not mean, of course, that the State may not prove an actual conspiracy to conceal. If this is done, statements made by a conspirator during the pendency and in furtherance of that conspiracy would be admissible against a co-conspirator. We recognized this in our *Myers. See also People v. Gilliland,* 39 Cal.App.2d 250, 103 P.2d 179, 182 (1940) and many of the cases we have already discussed. The State suggests that in the case *sub judice* there is evidence of such a conspiracy. It consists of plans made, immediately after the murder, to conceal gloves and a ski hat used during the crime—items that were in fact promptly disposed of. We assume that this conspiracy was established, but it is plain that Johnson's statement to Wilson, made some six months later, was made long after that conspiracy had ended, and could not possibly have been in furtherance of it. The State also points to evidence that Johnson threatened Wilson and, according to her, drugged her in efforts to persuade her not to reveal Johnson's participation in the murder. That evidence, however, shows no more than efforts of Johnson to avoid detection; it shows no conspiracy between Johnson and Rivenbark to that end.

■ Accordingly, the statement in issue was erroneously admitted. We do not recognize the notion of an implied

conspiracy to conceal in every case and there was no evidence to show a conspiracy to conceal that was pending when the statement was made. As a consequence, we must reverse Rivenbark's murder conviction.

■ Rivenbark was also convicted of burglary. He makes no mention of that conviction in his brief, nor does he present any argument as to why it should be reversed. He tells us:

> The Appellant [Rivenbark] was ultimately found to be guilty of first degree murder and was sentenced to life imprisonment under the jurisdiction of the Commissioner of Correction. It is from this judgment and conviction that this appeal is taken.

Since Rivenbark has not questioned the burglary conviction, it is not before us. *Langworthy v. State,* 284 Md. 588, 399, A.2d 578 (1979), *cert. denied,* 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981). Md.Rule 1031 c. 5. That conviction, therefore, is affirmed.

CONVICTION OF FIRST DEGREE MURDER RE-VERSED. CONVICTION OF AND SENTENCE FOR BURGLARY AFFIRMED. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY BALTI-MORE COUNTY, MARYLAND.