The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Douglas Ross PEDRIE,
Defendant-Appellee.

No. 84SA164.

Supreme Court of Colorado,
En Banc.

Nov. 10, 1986.

Robert L. Russel, Dist. Atty., David H. Zook, Chief Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Baker & Hostetler, John B. Moorhead, Marc D. Flink, Denver, for defendant-appellee.

LOHR, Justice.

The People appeal an order of the El Paso County District Court dismissing counts three and four of an information charging defendant Douglas Ross Pedrie with felony theft and second degree forgery. The trial court dismissed these counts at the conclusion of the preliminary hearing, ruling that the prosecution had failed to establish probable cause to believe that the defendant had committed either felony theft or second degree forgery stemming from certain transactions with Michael Kessler, as charged in the counts at issue. We reverse.

### I.

The charges in question arose from investment transactions between Douglas Pedrie and Michael Kessler with respect to certain oil wells located in Denton County, Texas. Two separate investments were involved, one relating to the Mustang Creek # 1 well and the other concerning two wells known as the Mohon offsets. Although a single written agreement covered both investments, it will facilitate understanding to describe them separately. The following summary of the relevant events is based on the evidence presented at the preliminary hearing.

#### Mustang Creek # 1 Well

On March 1, 1983, Pedrie and Kessler entered into a written investment agreement whereby Kessler undertook to buy a share of the working interest in the Mustang Creek # 1 oil well. As a result of that transaction, Kessler and Pedrie were to own equal fractional shares of that working interest.[1] Marble Falls Oil Corporation (Marble Falls) was stated to be the operator of the well. Kessler agreed to pay $25,000 for the completion expenses of the well as the purchase price for his interest, so as to match the funds already advanced by Pedrie. The agreement provided that Kessler would pay $10,000 of the purchase price by cashier's check payable to Marble Falls, to be delivered to the payee by Pedrie. The remaining $15,000 to be paid by Kessler was to come from his share of the income from the oil well production. Kessler obtained the cashier's check and gave it to Pedrie.

Rather than delivering the $10,000 cashier's check to Marble Falls as agreed, Pedrie endorsed the check by writing the following on the back of it: "Marble Falls Oil Corp., Douglas R. Pedrie, Pay to the Order of Ethel M. Pedrie." Ethel M. Pedrie is the defendant's mother. Pedrie delivered the check to his mother, who in turn endorsed it and deposited it into her personal checking account at the Bank of Cripple Creek.

The agreement between Pedrie and Kessler also provided that Pedrie would execute a division order, effective July 1, 1983, to the purchaser of hydrocarbons from the Mustang Creek # 1 oil well to reflect Kessler's interest. However, when Kessler contacted a representative of Marble Falls in June of 1983, he was informed that Marble Falls had no record of any investment by Kessler. Thereafter, Kessler received a letter from Pedrie dated July 14, 1983, advising him that the division order had not yet been executed, but was forthcoming.[2]

1. The agreement provided that Kessler would purchase a "3.0 percent working interest" and that Pedrie would continue to own a 3.0 percent working interest. The testimony and the defendant's brief suggest that Pedrie owned only a 3.0 percent working interest and that the parties were intending to divide this equally. The correct resolution of this issue is not important for the purpose of this opinion.

2. The defendant also told Kessler that the agreement as drawn contained certain errors. The operator was Ammo, Inc. rather than Marble Falls. Ammo, Inc. was an affiliate of Marble Falls. Also, the name of the well in which the parties had invested was Shelby I-A rather than Mustang Creek # 1. Mustang Creek was the name of the project or area in which the Shelby

Sometime during the summer of 1983, Kessler received a telephone call from one of the officers of Marble Falls informing him that no monies had yet been received by that corporation on Kessler's behalf.[3] Becoming concerned, Kessler contacted his bank to ascertain whether the $10,000 cashier's check had been presented for payment. As a result of that inquiry, Kessler learned that Pedrie had endorsed the check, purportedly on behalf of Marble Falls, and that his mother had deposited it into her account. Upon Kessler's request, an officer of the bank contacted Marble Falls and asked about the endorsement. The president of Marble Falls responded to the inquiry by letter on July 27, 1983, stating that Marble Falls had received no part of the proceeds of the $10,000 check, that Pedrie had no authority to endorse any check made payable to Marble Falls, and that Marble Falls' position was that "the reimbursement of the funds from this check should be directed to the account of Mr. Michael Kessler." [4]

### Mohon Offsets

The written agreement of March 1, 1983, between Pedrie and Kessler also provided that Kessler would advance $4,973 to Sunwood Energy, Inc. (Sunwood) toward payment of drilling and testing costs for two additional oil wells known as "Mohon Offsets," and would receive in return "one unit" in those wells. A contribution towards completion costs in the identical amount of $4,973 was then to be paid to Sunwood by Pedrie and reimbursed to him from Kessler's production income from the Mohon oil wells.[5]

On June 10, 1983, Pedrie paid $4,973 to Sunwood by check on behalf of Kessler for the Mohon wells completion costs. The check was deposited on June 27, 1983, by Sunwood. On July 1, 1983, Kessler drew a check on his personal account payable to Pedrie for $4,973, which Pedrie deposited in his personal account. Kessler then learned that Pedrie's check to Sunwood did not clear due to insufficient funds in Pedrie's account. Thus, Kessler had paid $4,973 to Pedrie and had obtained no corresponding credit from Sunwood for Kessler's completion costs obligation.

### II.

On November 10, 1983, the People filed an information in El Paso County District Court charging Pedrie with the felony theft and second degree forgery counts at issue here, in addition to other offenses.[6] Settlement negotiations concerning civil liability ensued between Kessler and Pedrie, resulting in the repayment to Kessler of over $15,000. Kessler could not remember whether the restitution was paid before criminal charges were filed, but the payment took place well after Kessler had filed a complaint with the district attorney and after the district attorney had discussed the matter with Pedrie's attorney.

The preliminary hearing was held on February 24, 1984. The prosecution presented testimony from a bank employee,

---

I–A was located. Further confusing the matter, there was a well designated Mustang Creek # 1. It was not productive and had been capped in October of 1982.

3. The record fails to indicate what prompted this telephone call to Kessler.

4. Although the record does not specifically reflect the contents of the telephone conversation between Marble Falls and the bank, it can be fairly inferred from Marble Falls' letter that Pedrie's use of "Marble Falls Oil Corp." in endorsing the check was discussed, as the letter from Marble Falls addressed that issue and Marble Falls had never seen or received the check.

5. This investment was solely Kessler's. He testified that Pedrie agreed to cover Kessler's completion costs, but gave no indication whether Pedrie was to receive anything except reimbursement in return.

6. The information was later amended and, as amended, contained eight counts. They arose out of three sets of oil investment transactions between the defendant and three other individuals, including Kessler. Only the third and fourth counts, charging felony theft and second degree forgery with respect to the Kessler transactions, concern us here.

the defendant's mother and Kessler with respect to the charges at issue here. At the conclusion of the preliminary hearing, the trial court held that the evidence did not establish probable cause to support the forgery and theft charges concerning the defendant's dealings with Kessler. The trial court therefore dismissed the two counts, and the People appealed.

### III.

■ Familiar principles guide our review of the trial court's order of dismissal. A preliminary hearing is a screening device used to determine whether probable cause exists to support charges that an accused person committed a particular crime. *People v. Nygren*, 696 P.2d 270, 272 (Colo. 1985); *Miller v. District Court*, 641 P.2d 966, 967 (Colo.1982); *People v. Treat*, 193 Colo. 570, 573, 568 P.2d 473, 474 (1977); *Maestas v. District Court*, 189 Colo. 443, 446, 541 P.2d 889, 891 (1975); Crim. P. 7(h)(1). To meet the standard of probable cause, there must be evidence sufficient to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that the defendant committed the crime charged. *People v. Nygren*, 696 P.2d at 272; *People v. Holder*, 658 P.2d 870, 871 (Colo.1983); *Miller v. District Court*, 641 P.2d at 968; *People v. Treat*, 193 Colo. at 574, 568 P.2d at 474-75. The evidence must be viewed in the light most favorable to the prosecution, and all potential inferences must be resolved in favor of the prosecution. *People v. Nygren*, 696 P.2d at 272; *People v. Holder*, 658 P.2d at 871-72. When testimony conflicts, a question of fact exists for the jury, and the judge must draw the inference favorable to the prosecution. *Miller v. District Court*, 641 P.2d at 968; *Hunter v. District Court*, 190 Colo. 48, 53, 543 P.2d 1265, 1268 (1975).

In this case, the prosecution was required to present evidence to establish probable cause that Pedrie had committed felony theft and second degree forgery pursuant to sections 18-4-401 and 18-5-103(1)(a), 8B C.R.S. (1986). Theft is committed when a person knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; ...

§ 18-4-401, 8B C.R.S. (1986). Theft is a class 4 felony if the value of the thing involved is $200 or more but less than $10,000, and is a class 3 felony if the value is $10,000 or more. § 18-4-401(2)(c), (d), 8B C.R.S. (1986).

The evidence was uncontradicted that Pedrie diverted the proceeds of the $10,000 check to his mother's account without authorization from Kessler or Marble Falls. Likewise, it can reasonably be inferred that Pedrie obtained Kessler's $4,973 check by deceitfully causing Kessler to believe that Pedrie had paid a like amount to Sunwood on Kessler's behalf.

The trial court ruled, however, that there was no probable cause to believe that Pedrie intended to deprive Kessler permanently of the funds that he invested. It stated:

In each instance there has been a return of the funds, plus apparently interest and/or attorney fees. And although the initial taking may have been felonious, I'm not convinced that this in effect has been a theft by way of an intent to permanently defraud [sic] the alleged victims.

■ Intent to deprive another permanently of the use or benefit of a thing of value may be inferred from the defendant's conduct and the circumstances of the case. *People v. Johnson*, 618 P.2d 262, 266 (Colo. 1980); *People v. Becker*, 187 Colo. 344, 347, 531 P.2d 386, 388 (1975). Such an intent is sufficiently established if the prosecution proves a knowing use by the defendant inconsistent with the owner's permanent use and benefit. *People v. Treat*, 193 Colo. at 576, 568 P.2d at 476. The deposit of the $10,000 check into Pedrie's mother's account and the receipt and retention of Kessler's $4,973 payment, under the circum-

stances of this case, amply establish probable cause on the issue of intent.

Although, as the trial court pointed out, both sums were ultimately returned, this cannot undo a completed crime. The fact that stolen property was eventually returned is not a defense to a theft charge. *Kelley v. People*, 166 Colo. 322, 326, 443 P.2d 734, 736 (1968); *People v. Burke*, 37 Colo.App. 289, 291, 549 P.2d 419, 421 (1976).

 Viewed in the light most favorable to the prosecution, *People v. Johnson*, 618 P.2d at 265; *Miller v. District Court*, 641 P.2d at 968, Kessler's testimony, coupled with the physical evidence, was sufficient to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that the defendant committed felony theft as to the funds of Kessler. The trial court erred in ruling to the contrary.

 The trial court also found lack of probable cause with respect to count 4, second degree forgery. Second degree forgery is committed if a person,

> with intent to defraud, ... falsely makes, completes, alters, or utters a written instrument which is or purports to be ...:
>
> (a) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status;
> ...

§ 18–5–103(1)(a), 8B C.R.S. (1986). The defendant altered or completed the $10,000 check with a false endorsement of the payee, Marble Falls Oil Corporation. Where any material portion of a negotiable instrument, including a name or signature, is fictitious, a forgery conviction may be sustained. *People v. Brown*, 193 Colo. 120, 122, 562 P.2d 754, 755–56 (1977); *People v. Pool*, 185 Colo. 131, 134, 522 P.2d 102, 104 (1974). There was testimonial and physical evidence that the defendant falsely placed a purported endorsement of Marble Falls on the back of Kessler's $10,000 cashier's check.

 The remaining element essential to the crime of second degree forgery is the intent to defraud. *People v. Billington*, 191 Colo. 323, 327, 552 P.2d 500, 503 (1976); *People v. Pool*, 185 Colo. at 134, 522 P.2d at 104. The trial court stated simply, "I don't believe that there was a fraud or forgery," but there was evidence to the contrary. The evidence was that Pedrie purportedly endorsed a $10,000 check payable to Marble Falls without the authorization of Marble Falls. Pedrie reimbursed Kessler for this sum only after criminal charges had been threatened or filed. Drawing all reasonable inferences in favor of the prosecution, this evidence established probable cause to believe that Pedrie falsely endorsed the check with the intent to defraud Kessler. The trial court erred in ruling to the contrary.

We reverse the order of dismissal and remand this case to the district court with directions to reinstate counts three and four.