The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Martha A. SHARP, Defendant–Appellant.

No. 02CA1262.

Colorado Court of Appeals,
Div. III.

June 17, 2004.

Certiorari Denied Dec. 20, 2004.

Ken Salazar, Attorney General, Melody Mirbaba, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elisabeth Hunt White, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Martha A. Sharp, appeals the judgment of conviction entered upon a jury verdict finding her guilty of theft and unauthorized use of a financial transaction device. We affirm.

In January 2001, defendant rented a hotel room by tendering $100 cash and a cancelled credit card. In February, when defendant's hotel bill reached $1,000, a hotel employee attempted to charge her credit card. Apparently, the hotel employee was not informed by the credit card company that the card had been cancelled. On March 9, 2001, a hotel employee attempted to charge defendant's credit card, but the card was rejected. The hotel employee asked defendant about the card and defendant told her to call an authorization telephone number, which was the number for a resort. The employee asked defendant to leave the premises, and defendant complied.

Several months later, defendant received hotel membership reward certificates from the parent chain of hotels. Defendant returned to the hotel and remained there until July, at which time she owed $1,179.38. A few days later, an employee alerted the hotel manager that defendant's account had reached the hotel's credit limit. Defendant attempted to use the hotel reward checks and credits to pay for her stay, but the hotel could not accept them because the credit could be used only at full service hotels. The manager asked defendant to leave and summoned police.

Defendant was charged with one count of theft and one count of unauthorized use of a financial transaction device arising out of events that occurred from June 28 to July 8, 2001. Defendant also was charged with one count of theft and another count of unauthorized use of a financial transaction device with respect to her hotel stay from January 25 to March 9, 2001.

In February 2002, defendant was convicted of the charges relating to January to March 2001 and was acquitted of charges relating to the June and July 2001 stay. Defendant was sentenced concurrently to seven years community corrections for theft and three years community corrections for unauthorized use of a financial transaction device.

I.

■ Defendant argues that by enacting the specific offense of defrauding an innkeeper, under § 12–44–102, C.R.S.2003, the General Assembly abrogated the prosecutor's general discretion to charge her with theft under § 18–4–401(1), C.R.S.2003. We are not persuaded.

Section 12–44–102 states:

Any person who, with intent to defraud, procures food or accommodations from any public establishment, without making payment therefor in accordance with his or her agreement with such public establishment, is guilty of a misdemeanor if the total amount due under such agreement is five hundred dollars or less and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for not more than ninety days, or by both such fine and imprisonment; and, if the amount due under such agreement is more than five hundred dollars, such person commits a class 6 felony and shall be punished as provided in section 18–1.3–401, C.R.S.

Under § 18–4–401(1)(b), C.R.S.2003, "A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and ... [k]nowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit...." Theft is a class 4 felony "if the value of the thing involved is five hundred dollars or more but less than fifteen thousand dollars." Section 18–4–401(2)(c), C.R.S.2003.

■ "[E]nactment by the General Assembly of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent is shown to limit prosecution to the special statute." *People v. Bagby*, 734 P.2d 1059, 1061 (Colo.1987). "[A] single transaction may give rise to the violation of more than one criminal statute." *People v. Westrum*, 624 P.2d 1302, 1303 (Colo.1981). Additional-

ly, when a defendant's conduct could be punished under a general statute and a more specific statute, it is the prosecutor's function to determine under which statute to prosecute the alleged crime. *See People v. Westrum, supra.*

In *People v. Tow*, 992 P.2d 665 (Colo.App. 1999), a division of this court established a test to determine whether the General Assembly intended to preclude prosecution under a general statute by enacting a specific statute. This test analyzes (1) whether the specific statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the specific statute carefully defines different types of offenses in detail. *See People v. Stansberry*, 83 P.3d 1188 (Colo. App.2003) (*Tow* factors applied in concluding that the defendant's equal protection rights were not violated where he was charged with forgery instead of displaying an altered motor vehicle registration number plate).

*People v. Bagby, supra,* upon which defendant relies, is distinguishable from the facts here. In *Bagby*, the defendant was charged with offering a false instrument for recording after he falsely completed a liquor license application. The same conduct was proscribed by the Colorado Liquor Code, violation of which was a misdemeanor. The supreme court held that the defendant could be prosecuted only for violating the Liquor Code, because the broad language and detail of the Liquor Code indicated legislative consideration of the licensing process, including appropriate sanctions. The Liquor Code defined types of offenses with references to specific provisions of the Colorado Criminal Code, indicating, within the Liquor Code, intent to delineate types of punishment available for violating its provisions.

Here, although defrauding an innkeeper is included under the rubric "Hotels and Food Service Establishments," the article is not a comprehensive regulatory scheme like the Liquor Code. The Liquor Code, by contrast, invokes the full extent of the state's police powers. Punishment for violation of the innkeeper statute is not delineated as in the Liquor Code.

Thus, we conclude that by enacting § 12–44–102, the General Assembly did not intend to preclude prosecution for theft. *See, e.g., People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972)(statute regarding misuse of credit cards did not preclude prosecution from bringing forgery charges where the defendant engaged in conduct that could have been prosecuted under both statutes); *Hucal v. People,* 176 Colo. 529, 493 P.2d 23 (1971)(statute relating to embezzlement of public monies did not preclude prosecution of offense under general theft statute).

## II.

We likewise reject defendant's contention that her right to equal protection was violated because defrauding an innkeeper and theft punish identical conduct, but defrauding an innkeeper carries a lesser penalty.

Under the Colorado Constitution, equal protection is violated if different statutes proscribe the same criminal conduct with disparate criminal sanctions. *People v. Marcy,* 628 P.2d 69 (Colo.1981); *see also People v. Westrum, supra,* 624 P.2d at 1303 ("[I]t is only where the same criminal conduct is proscribed in both statutes that equal protection problems arise. If reasonable distinctions can be drawn between the statutes, equal protection is not offended.").

As we noted in Part I, the crimes of theft and defrauding an innkeeper comprise different elements, and the punishment prescribed is different for each crime. Defrauding an innkeeper requires intent to defraud, whereas theft requires intent permanently to deprive a person of a thing of value.

Thus, reasonable distinctions can be drawn between the two crimes, and defendant's equal protection rights have not been violated.

## III.

Defendant next contends that the prosecution did not, as required by § 18–4–402, present evidence that defendant "used

... the thing of value in such a manner as to permanently deprive the other person of its use or benefit." We disagree.

We review challenges to the sufficiency of the evidence to determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo. 1988); *see also People v. McAfee,* 104 P.3d 226, 2004 WL 583721 (Colo.App. No. 00CA2379, Mar. 25, 2004). The evidence must be both substantial and sufficient to support the determination of guilt beyond a reasonable doubt. An appellate court may not substitute its judgment for that of the jury and reweigh the evidence or the credibility of witnesses. *Kogan v. People, supra.*

"The intent to deprive another permanently of the use or benefit of his property is an essential element of [theft]." *People v. Archuleta,* 180 Colo. 156, 159, 503 P.2d 346, 347 (1972); *see also People v. Burke,* 37 Colo.App. 289, 549 P.2d 419 (1976)(intent at the time of taking permanently to deprive is the essential element of theft).

Intent to deprive another permanently of the use or benefit of a thing of value may be inferred from the defendant's conduct and the circumstances of the case. Such an intent is sufficiently established if the prosecution proves a knowing use by the defendant inconsistent with the owner's permanent use and benefit.

*People v. Pedrie,* 727 P.2d 859, 862 (Colo. 1986); *see Hucal v. People, supra* (jury could infer intent from the defendant's acts of wrongfully appropriating a check, converting it into a cashier's check, and giving it to a third party); *People v. Meads,* 58 P.3d 1137 (Colo.App.2002)(theft statute requires co-existent intent permanently to deprive of use and benefit; rule would be inane if it required permanent deprivation of property before a conviction could be sustained, because every time stolen property was recovered and returned to its true owner, the thief would have to be acquitted), *aff'd,* 78 P.3d 290 (Colo.2003); *People v. Rios,* 43 P.3d 726

(Colo.App.2001)(the defendant was subject to prosecution for theft if he intended to deprive taxi driver permanently of the use or benefit of the fare).

Here, as the prosecution argued in closing:

[D]efendant has to knowingly use a thing of value, which is obviously the room and service in this case. Such as to permanently deprive [the] other person of its use or benefit.

Again, focus on use. They could not present this room during this period of time on both occasions under the ... standard to be applied.

Thus, the hotel never received the benefit of defendant's stay, and she deprived it of the compensation it was owed.

We conclude that *People v. McClure,* 186 Colo. 274, 526 P.2d 1323 (1974), upon which defendant relies, is distinguishable. In *McClure,* the defendant's theft conviction was reversed because there was no evidence that he exercised unauthorized control over money he collected from several people based on an advertisement for discounted airline tickets. The defendant was arrested on unrelated charges during the time he should have been purchasing the tickets. The court held that the fact that the defendant accepted payment, insisted on payment three weeks before the tickets were to be purchased, did not perform as required, and advised customers not to call the airline to confirm their reservations, was insufficient to show a specific intent to deprive the customers of their money. The court concluded that, at most, a creditor-debtor relationship existed. Hypothetically, the defendant could have performed had he not been arrested on the unrelated charge.

Here, however, the record reflects that defendant knew her credit card had been cancelled when she first tendered it, yet she continued to accrue a bill against what was in effect a nonexistent account. When asked to provide a different form of payment, defendant instead directed a hotel employee to a telephone number that she said the hotel could use to obtain authorization for the credit card. The telephone number was for a

resort. Thus, defendant continued to deceive the hotel. *See People v. Pedrie, supra.*

When viewed in the light most favorable to the prosecution, the evidence tends to show that defendant intended permanently to deprive the hotel of compensation for the room she occupied.

## IV.

■ Defendant contends that the evidence was insufficient to convict her of theft under each of the alternative theories presented by the elemental instruction, and thus, her theft conviction was unconstitutional. We disagree.

During closing argument, the People stated, "There is deception. The other way to think about ... this is sort of contingent authorization. We will allow you to stay because we believe you can pay us." Thus, the People presented alternative theories under which defendant could be convicted: lack of authorization *or* deception.

We note that the court asked defense counsel directly, "[A]ny objection to the form, content or order of the instructions or jury forms applicable to the three charges remaining at this time?" Defense counsel responded, "No, Judge."

Defendant relies on *James v. People,* 727 P.2d 850 (Colo.1986), to support her contention. In *James,* the supreme court held that unless the evidence on each of three alternative theories of causing sexual assault was sufficient to support a verdict by proof beyond a reasonable doubt, there could be no assurance that the general verdict was reliable. The court reasoned that if a jury is asked to render a general verdict based on alternative theories of culpability, on appeal there is no way to determine which theory the jury adopted in reaching its verdict. The *James* court concluded that, in such circumstances, because due process requires a conviction to be based upon proof beyond a reasonable doubt, the entire verdict was void.

However, in *People v. Dunaway,* 88 P.3d 619 (Colo.2004), the supreme court relied upon the post-*James* decision of *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and overruled *James.*

The supreme court concluded that due process does not require a reversal of a conviction simply because there may be insufficient evidence to support one of the alternative theories of liability. "[J]urors should be trusted to follow the court's instructions to find the defendant guilty only if the prosecution has proved each of the elements of the charged crime beyond a reasonable doubt...." *People v. Dunaway, supra,* 88 P.3d at 629. Due process does not require overturning the verdict simply because of the very remote possibility that the jury was somehow misled by one of the alternative theories. "While ... the better practice is for the court to remove from the instruction a theory of liability that is not supported by sufficient evidence, the fact that the court fails to do so 'does not provide an independent basis for reversing an otherwise valid conviction.'" *People v. Dunaway, supra,* 88 P.3d at 629 (quoting *Griffin v. United States, supra,* 502 U.S. at 60, 112 S.Ct. at 474).

The supreme court concluded that "permitting an instruction on an alternative theory of liability for the same charged offense not supported by sufficient evidence does not rise to the level of a constitutional error where the conviction for that offense is otherwise supported by sufficient proof." *People v. Dunaway, supra,* 88 P.3d at 631. Thus, "where the evidence presented at trial against a criminal defendant is otherwise sufficient to support the determination of guilt, providing the jury with an instruction containing a factually insufficient theory of liability for the same charged offense does not alone violate the due process clause of the Colorado Constitution." *People v. Dunaway, supra,* 88 P.3d at 631.

Therefore, we need not consider by which theory the jury determined defendant's guilt, because the record supports the theory that defendant procured her stay through deception, and that theory alone was sufficient under *Dunaway* to uphold defendant's conviction.

## V.

■ We also reject defendant's contention that the trial court incorrectly instructed

the jury regarding the mens rea element of theft, thereby reducing the prosecution's burden of proof.

Defendant did not object to the jury instruction. Therefore, we review for plain error. *See People v. Garcia*, 28 P.3d 340 (Colo.2001).

The jury instruction regarding theft stated:

The elements of the crime of Theft are:
1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly
4. obtained or exercised control over
5. anything of value
6. of another,
7. without authorization or by threat or deception, and
8. knowingly,
9. used, concealed, or abandoned the thing of value
10. in such a manner as to permanently deprive the other person of its use or benefit, and
11. the value of the thing involved is five hundred dollars or more but less than fifteen thousand dollars.

Defendant relies on *People v. Bornman*, 953 P.2d 952 (Colo.App.1997), to argue that the court's instructions allowed the jury to return a guilty verdict whether or not defendant possessed the mental state required by statute. In *Bornman*, a division of this court concluded that a theft instruction that did not explicitly require the jury to apply the mens rea requirement of "knowingly" to the "without authorization" element of the offense was erroneous. In *Bornman*, the instruction set aside, in a separate paragraph, the element of "knowingly" so that it did not apply to the "without authorization" element. The *Bornman* division, however, distinguished *People v. Stephens*, 837 P.2d 231 (Colo.App.1992), where no error was found when "knowingly" was listed as number three and each later element was assigned a different number.

We find *People v. Stephens* instructive, and we follow it here.

Here, "knowingly" is listed as the third element, and there are no subparagraphs following that element. Thus, the jury could conclude that "knowingly" applied to the separately numbered following paragraphs. We therefore conclude there was no plain error.

The judgment is affirmed.

Judge TAUBMAN and Judge HUME * concur.